## DETROIT BANK (FORMERLY DETROIT SAVINGS BANK) *v.* UNITED STATES.

No. 156.   Argued December 9, 10, 1942.—Decided January 4, 1943.

*Messrs. Edward S. Reid, Jr.* and *Emmett E. Eagan,* with whom *Messrs. Ferris D. Stone* and *Cleveland Thurber* were on the brief, for petitioner.

*Mr. J. Louis Monarch,* with whom *Solicitor General Fahy, Assistant Attorney General Clark,* and *Messrs. Sewall Key, Alvin J. Rockwell,* and *Valentine Brookes* were on the brief, for the United States.

MR. CHIEF JUSTICE STONE delivered the opinion of the Court.

The questions for decision are:

(1) Whether the lien for federal estate taxes authorized by § 315 (a) of the Revenue Act of 1926, 44 Stat. 9, 80, attaches to the interest of the decedent in an estate by the entirety.

(2) Whether the lien is required to be recorded under the provisions of R. S. § 3186, as amended, in order to give it superiority to the lien of a mortgagee who acquired his mortgage for value in good faith without knowledge of the tax lien.

(3) Whether § 315 (a), so applied as to give the lien superiority over such subsequent mortgages, offends the Fifth Amendment.

The Government brought the present suit in the district court pursuant to R. S. § 3207, to foreclose an asserted lien for estate taxes assessed under § 302 (e) upon certain parcels of real estate. The real estate had been owned at the time of his death by decedent and his wife as tenants by the entirety. Following his death the real estate was not included as a part of his estate in computing the federal estate tax. Prior to assessment or payment of the tax, the parcels of real estate in question were mortgaged, some by decedent's widow and others by his children, to petitioner who acted without knowledge of the Government's asserted lien or claim for taxes. Default in payment of the mortgage indebtedness having occurred, petitioner bought in the mortgaged property on foreclosure sale. The trial court found that petitioner acquired the mortgages in good faith and for value.

The Commissioner of Internal Revenue assessed an estate tax deficiency against decedent's estate by reason of the failure to include the value of the estate by the entirety in the computation of the tax, which the Board of Tax Appeals sustained. The Government then brought the present proceeding to enforce the lien. The district court held that the tax lien, although unrecorded, was superior to the mortgage lien and to local, state and county liens for taxes, which had accrued after the death of decedent. The Circuit Court of Appeals affirmed, 127 F. 2d 64. We were moved to grant certiorari, *post,* p. 607, by the importance of the questions presented to the administration of the revenue laws.

Section 315 (a) of the Revenue Act of 1926 provides in part that:

"Unless the tax is sooner paid in full, it shall be a lien for ten years upon the gross estate of the decedent, except

that such part of the gross estate as is used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof, shall be divested of such lien. If the Commissioner is satisfied that the tax liability of an estate has been fully discharged or provided for, he may, under regulations prescribed by him with the approval of the Secretary, issue his certificate, releasing any or all property of such estate from the lien herein imposed."

The lien attaches at the date of the decedent's death, since the gross estate is determined as of that date and the estate tax itself becomes an obligation of the estate at that time without assessment. See *Hertz* v. *Woodman,* 218 U. S. 205, 220; *Ithaca Trust Co.* v. *United States,* 279 U. S. 151, 155; *United States* v. *Ayer,* 12 F. 2d 194; *Rosenberg* v. *McLaughlin,* 66 F. 2d 271. That the lien attaches at the decedent's death without necessity for assessment or demand is implicit in the proviso that such part of the estate as is used for payment of charges against the estate and expenses of administration shall be "divested of the lien."

Petitioner urges that since the lien here asserted is "upon the gross estate of decedent" it does not attach to the land held by the entirety which passed to the decedent's widow, not as a part of his estate but by her right to survivorship. But this argument disregards the fact that the lien is for the particular tax imposed by § 302 of the Revenue Act of 1926 upon "the value of the gross estate of decedent" at the time of his death, including "the value at the time of his death of all property, real or personal, . . . (e) to the extent of the interest therein held . . . as tenants by the entirety by the decedent and spouse . . ."

Since the lien authorized by § 315 (a) is for the tax which in its computation includes as a part of the taxable estate the value of the estate by the entirety, see *Tyler* v. *United States,* 281 U. S. 497, we think it too plain for argument

that the lien extends to the estate as thus defined and made the base on which the tax is computed. The gross estate of decedent within the meaning of § 315 (a) is the estate or property on which the tax chargeable to decedent's estate is computed. Congress, in § 314 (b), similarly denominated the proceeds of insurance on the life of decedent payable to beneficiaries as "a part of the gross estate" in providing for recovery from the beneficiaries of their pro rata shares of the estate tax. · We cannot impute to Congress an intention not disclosed by the statute or its legislative history to exclude from the tax lien property which it directs to be included in the decedent's gross estate for the purpose of computing the tax.

Nor can we conclude, as petitioner argues, that the lien for estate tax authorized by § 315 (a) is subject to the earlier provision for recording tax liens in R. S. § 3186. This section, so far as now relevant, provides,

"That if any person liable to pay any tax neglects or refuses to pay the same after demand, the amount shall be a lien in favor of the United States from the time when the assessment list was received by the Collector, except when otherwise provided, until paid . . . upon all property and rights to property belonging to such person: *Provided, however,* that such lien shall not be valid as against any mortgagee, purchaser, or judgment creditor until notice of such lien shall be filed by the Collector in the office of the clerk of the district court of the district within which the property subject to such lien is situated . . ."

The section contains a further proviso that whenever any state, by appropriate legislation, makes provision for the filing of such notice in the office of a registrar or recorder of deeds, "then such liens shall not be valid in that state against any mortgagee, purchaser or judgment creditor until such notice shall be filed" in the appropriate office.

Michigan has made provision for filing notices of such tax liens in the offices of the registers of deeds in the counties of the state. § 3746, Compiled Laws of Michigan, 1929.

The part of R. S. § 3186 imposing the lien was enacted in 1866, 14 Stat. 107. The provision for filing notice of government tax liens was added by amendment of March 4, 1913, 37 Stat. 1016. Before the amendment this Court had held in *United States* v. *Snyder,* 149 U. S. 210; cf. *United States* v. *Curry,* 201 F. 371, 374, that in the absence of a federal statute requiring government tax liens to be recorded they are superior to subsequent mortgages.

Petitioner contends that Congress, in enacting § 209 of the Revenue Act of 1916, which, with amendments, became § 315 (a) of the Revenue Act of 1926, did not impose an independent lien but merely made expressly applicable to the federal estate tax the lien created by R. S. § 3186, modifying that lien in some respects as will be further noted. It urges that save where inconsistent with the express terms of § 315 (a), all provisions of R. S. § 3186 are made applicable to the estate tax lien by reason of § 211 of the Revenue Act of 1916, which provides:

"That all administrative, special, and general provisions of law, including the laws in relation to the assessment and collection of taxes not heretofore specifically repealed are hereby made to apply to this title so far as applicable and not inconsistent with its provisions."

But we think that the differences between R. S. § 3186 and § 315 (a), and their legislative history as separate enactments, indicate that each was intended to operate independently of the other.

Section 3186 refers only to liens which are made such by that section. Section 315 (a) authorizes the lien for estate taxes and makes no reference to R. S. § 3186 or to any requirement for recording notice of the lien. The lien of R. S. § 3186 is upon all the property of the person liable

for the tax, while the lien of § 315 (a) attaches only to the property included in and taxed as the gross estate not used to pay administration expenses.   The lien of R. S. § 3186 continues until the tax liability is paid while the lien of § 315 (a) continues for ten years from the death of the decedent.   Of particular significance is the difference in time when the liens attach under the two sections.   Under R. S. § 3186 there is no lien and no notice can be recorded until there has been a demand by the collector and a refusal to pay it by the taxpayer.   Under § 315 (a), as has been stated, the lien arises on the death of the decedent and becomes effective against purchasers and mortgagees without assessment or demand and obviously before it would be possible to record a notice of lien under the provisions of R. S. § 3186.

Since the enactment of the Revenue Act of 1916, R. S. § 3186 has been amended four times,[1] and § 209 of the Revenue Act of 1916 (which became § 315 (a) of the 1926 Act) has been amended twice and twice reënacted without amendment.[2]   With one exception, in none of the amendments or reënactments of the one section was any reference made to the other.   Section 409 of the Revenue Act of 1921 added a provision to the estate tax lien section authorizing the Commissioner under certain circumstances to release the lien.   A similar provision was not added to R. S. § 3186 until the Revenue Act of 1928.   By § 613 of that Act, § 3186 was amended to provide for such release, the amendment, by subsection (f), being made applicable

---

[1] Act of Feb. 26, 1925, 43 Stat. 994; Revenue Act of 1928, § 613, 45 Stat. 875; Revenue Act of 1934, § 509, 48 Stat. 757; Revenue Act of 1939, § 401, 53 Stat. 882.   The section is now §§ 3670–77 of the Internal Revenue Code.

[2] Revenue Act of 1919, § 409, 40 Stat. 1100; Revenue Act of 1921, § 409, 42 Stat. 283; Revenue Act of 1924, § 315 (a), 43 Stat. 312; Revenue Act of 1926, § 315 (a), 44 Stat. 80.   The section is now § 827 of the Internal Revenue Code.

to "a lien in respect of any internal revenue tax, whether or not the lien was imposed by this section."

At the same time, the release provision of § 315 (a) was repealed. By § 809 of the Revenue Act of 1932, however, the latter was reënacted, it having been discovered that there was need for a provision authorizing release of the estate tax lien prior to assessment. H. Rep. No. 708, 72d Cong. 1st Sess. 50. Moreover it is not without significance that Congress, in enacting a gift tax in the Revenue Act of 1932, provided in § 510 of that Act that the gift tax should be a lien on the property passing to the donee, using words almost identical to these of § 315 (a). The Committee Reports state that "by this provision there is imposed a lien additional to that imposed by section 3186 of the Revised Statutes." H. Rep. No. 708, 72d Cong. 1st Sess. 30; Sen. Rep. No. 665, 72d Cong. 1st Sess. 42. This history and the differences between the provisions already noted, would seem to compel the conclusion that § 315 (a) was intended to operate independently of R. S. § 3186, and that the estate tax lien created by the former is not subject to the latter's requirement of recordation.

Sections 313 (b) and (c) lend support to this conclusion. Subsection (b) sets up a procedure whereby the Commissioner may be required to certify the amount of the tax due and in that event subsection (c) releases any part of the gross estate subsequently acquired by a bona fide purchaser, from any lien for a deficiency in the tax which may be thereafter assessed—a procedure which would have afforded adequate protection to petitioner from any deficiency lien in this case. These provisions not only recognize that the lien comes into existence before the tax is assessed or demanded, but they are unnecessary and inoperative if notice of the lien is required by R. S. § 3186 to be recorded.

It is evident from a comparison of the two sections that Congress, in providing for the estate tax lien, has proceeded on the assumption that in the case of the tax on property passing at death and which is distributed in consequence of the death, there is greater need of a lien in advance of assessment and demand for payment of the tax than in the case of other types of taxes; and that there is less need for protection of third persons by a recorded notice of the lien when the property passing at death is normally dealt with by probate and estate tax proceedings of public notoriety.

This is emphasized by the provisions of § 315 (b) which relieve bona fide purchasers of property transferred *inter vivos* by the decedent in contemplation of death, from the lien which in the case of property transferred at death is enforcible against such purchasers. This provision, like § 313 (c) would be unnecessary if R. S. § 3186 required notice of the lien to be recorded. The conclusion seems inescapable that the two sections apply independently, each of the other, at least to the extent that notice of the lien authorized by § 315 (a) is not required to be recorded under R. S. § 3186. Whether the lien created by § 315 (a) could be recorded by the procedures established by § 3186 and state statutes enacted in accordance with that section need not now be decided.

Petitioner also insists that the statute violates the Fifth Amendment by authorizing an unrecorded tax lien against the property mortgaged to it and withholding such a lien against innocent purchasers of property which a decedent had transferred *inter vivos* in contemplation of death. Unlike the Fourteenth Amendment, the Fifth contains no equal protection clause and it provides no guaranty against discriminatory legislation by Congress. *LaBelle Iron Works* v. *United States*, 256 U. S. 377, 392; *Steward Machine Co.* v. *Davis*, 301 U. S. 548, 584–585; *Sunshine Coal Co.* v. *Adkins*, 310 U. S. 381, 400, 401; *Helvering* v.

*Lerner Stores Co.,* 314 U. S. 463, 468. Even if discriminatory legislation may be so arbitrary and injurious in character as to violate the due process clause of the Fifth Amendment, see *Steward Machine Co.* v. *Davis, supra,* 585; *Currin* v. *Wallace,* 306 U. S. 1, 13, no such case is presented here.

For reasons already indicated we think there is adequate basis for the distinction made by the statute between innocent purchasers of property which passes at the decedent's death and those of property which he conveyed in his lifetime in anticipation of death. As we have pointed out, the estate tax status of property passing at decedent's death is more readily ascertained than that of property which he has conveyed away in his lifetime and which so far as normal probate and tax proceedings are concerned would not appear to be related to his estate or taxable as a part of it. We do not find in such a classification any basis for saying that the discrimination in the statute is so arbitrary as to violate due process.

*Affirmed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.