**HERRERA v. UNITED STATES.**
No. 13733.

United States Court of Appeals
Ninth Circuit.

Nov. 19, 1953.

Writ of Certiorari Denied
March 15, 1954.

See 74 S.Ct. 529.

Lionel Richman, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Chief, Criminal Division, Manuel L. Real, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, HEALY and POPE, Circuit Judges.

HEALY, Circuit Judge.

Appellant was convicted on three counts of an indictment charging him with the transportation within the United States of aliens, knowing that they were in the United States in violation of law and having reasonable grounds to believe that their entry occurred less than three years prior to the transportation.[1]

The aliens in question were Mexicans who had clandestinely crossed the border into Southern California. The indictment was predicated on Section 8 of the Immigration Act of 1917, as amended by Public Law No. 283, approved March 20, 1952, 66 Stat. p. 26, 8 U.S.C.A. § 144(a) (2) [now 8 U.S.C.A. § 1324(a) (2).] The facts are stipulated, and the conviction is assailed only on grounds having to do with the validity of the statute. The contentions are, first, that the statute is void for vagueness, and second, that it constitutes an arbitrary and capricious form of class legislation.

Public Law 283 is entitled "An Act To assist in preventing aliens from entering or remaining in the United States illegally." House Report No. 1377, 82nd Cong., 2nd Sess., indicates that the purpose of the legislation was to "overcome a deficiency in the present law making it an offense to harbor or conceal aliens who have entered this Country illegally, *and to strengthen the law generally in preventing aliens from entering or remaining in the United States illegally.*" [Emphasis supplied.] The legislation appears to have been an outgrowth of the decision in United States v. Evans, 333 U.S. 483, 68 S.Ct. 634, 92 L.Ed. 823, in which it was held that the existing statute contained no penalty provision for a person convicted of harboring or concealing an alien illegally in the United States. The amended § 8(a) is copied on the margin.[2]

---

1. The transportation alleged and admittedly occurring was from Coachella Valley in Southern California to Sacramento in that state.

2. "An Act To assist in preventing aliens from entering or remaining in the United States illegally.

    ✳     ✳     ✳     ✳     ✳     ✳

"Sec. 8(a). Any person, including the owner, operator, pilot, master, commanding officer, agent, or consignee of any means of transportation who—

"(1) brings into or lands in the United States, by any means of transportation or otherwise, or attempts, by himself or through another, to bring into or land in the United States, by any means of transportation or otherwise;

"(2) knowing that he is in the United States in violation of law, and knowing or having reasonable grounds to believe that his last entry into the United States occurred less than three years prior thereto, transports, or moves, or attempts to transport or move, within the

■ The claim of vagueness and uncertainty is bottomed on the employment in paragraph numbered (2) of § 8(a)—under which the indictment was drawn—of the pronouns "he" and "his." It is said that this paragraph is susceptible of two radically different interpretations, depending upon whether the pronouns "he" and "his" refer back to the phrase "any person" as used at the beginning of subdivision (a), or forward to the phrase "any alien," found in paragraph (4). The argument proceeds on a holding in United States v. De Cadena, D.C., 105 F.Supp. 202, 207, to the effect that the legislation is in this respect unconstitutional for vagueness.

While the verbal arrangement of the statute may be thought awkward, we are of opinion that a reading of it as a whole in light of the congressional declaration of purpose leaves no rational doubt as to what was intended. That part of subsection 8(a), ending with the word "who," specifies the persons whose activities are the subject matter of the legislation. Paragraph (1) following relates to the activity of smuggling aliens into the United States; paragraph (2) to the transportation of aliens within the United States by one who knows they are unlawfully here and who knows or has reason to believe that the alien's last entry occurred within three years prior to the transportation; paragraph (3) to the concealing, harboring or shielding of aliens unlawfully in the United States; and the first part of paragraph (4) is aimed at those who aid, abet or encourage the smuggling of aliens into this country. Except for the proviso at the end of paragraph (4) the whole of the subsection constitutes a single sentence, divided into paragraphs which are in the interest of clarity separated from each other by semicolons. The penalty provision is not separately stated in the paragraphs but is set forth in the last. The several types of conduct banned are all made subject to the same punishment there specified, namely, fine or imprisonment "for each alien in respect to whom any violation of this subsection occurs". The words "this subsection" can only refer to subsection (a). Thus it is manifest that the "he" and "his" of paragraph (2) refer to the phrase "any alien," which finally shows up in paragraph (4) after the several prohibited activities in respect of the alien have been specified.

■ The argument that the statute is arbitrary and capricious to the point of invalidity is made on two grounds, but one of which merits attention. This is that the proviso of paragraph (4), for convenience again quoted on the margin,[3] "establishes an unconstitutional preferred class," namely *employers* of aliens known to be unlawfully in the United States. The proviso relates only to "harboring," which is a practice condemned

United States by means of transportation or otherwise, in furtherance of such violation of law;

"(3) willfully or knowingly conceals, harbors, or shields from detection, or attempts to conceal, harbor, or shield from detection, in any place, including any building or any means or transportation; or

"(4) willfully or knowingly encourages or induces, or attempts to encourage or induce, either directly or indirectly, the entry into the United States of any alien, including an alien seaman, not duly admitted by an immigration officer or not unlawfully entitled to enter or reside within the United States under the terms of this Act or any other law relating to the immigration or expulsion of aliens, shall be guilty of a felony, and upon conviction thereof shall be punished by a fine not exceeding $2,000 or by imprisonment for a term not exceeding five years, or both, for each alien in respect to whom any violation of this subsection occurs: Provided, however, That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring.

"(b) * * *

"Sec. 2. * * * ."

3. "Provided, however, That for the purposes of this section, employment (including the usual and normal practices incident to employment) shall not be deemed to constitute harboring."

in paragraph (3) of the law. Harboring is thus treated in the statute as an offense separate and distinct from that of transportation, which latter is the concern of paragraph (2).[4] Assuming, without consideration of the point, that the classification is unreasonable, we are unable to see how appellant is in position to take advantage of the circumstance. He was charged, not with harboring, but with transporting. It is a familiar rule that a party can be heard to question a statute's validity only when and in so far as it is being applied to his disadvantage. Dahnke-Walker Milling Co. v. Bondurant, 257 U.S. 282, 42 S.Ct. 106, 66 L.Ed. 239. Cf., also, Berea College v. Com. of Kentucky, 211 U.S. 45, 29 S.Ct. 33, 53 L.Ed. 81. Whether, in view of the problems with which Congress was confronted in the enactment of this legislation, the proviso of paragraph (4) is a reasonable one is a matter best left to be considered when decision of it becomes essential. If believed necessary to the preservation of the statute the courts would in all likelihood give only narrow scope to the proviso.

The judgment is affirmed.

POPE, Circuit Judge.

I concur. If this were a state law I would have some doubts about a classification which punishes the man who gives a couple of "wetbacks" a ride, and yet entirely excuses those whose employment of such aliens is primarily responsible for the whole Mexican alien problem. But the Fifth Amendment contains no equal protection clause, Detroit Bank v. United States, 317 U.S. 329, 337, 63 S.Ct. 297, 87 L.Ed. 304, and the discrimination here cannot be said to be so arbitrary and injurious in character as to make the statute wanting in due process.

4. The verb "harbor" is defined by Webster (New Int. Dict., 2nd Ed., Unabridged) as: "To afford lodging to; to entertain as a guest; to shelter; to receive; to give a refuge to; to contain; to indulge or cherish (a thought or feeling);—now usually with reference to evil, esp. unlawful, act or intent."

The verb "transport" is defined by the same authority as: "To convey; esp., to carry or convey from one place or station to another, as by boat or rail; to transfer; as, to transport goods or troops."