UNITED STATES of America, Plaintiff,

v.

**BUCKEYE STEAMSHIP COMPANY,**
Defendant.

Civ. No. 33819.

United States District Court
N. D. Ohio, E. D.
April 20, 1960.

Russell E. Ake, U. S. Dist. Atty., Cleveland, Ohio, for plaintiff.

McCreary, Hinslea & Ray, Cleveland, Ohio, Robert G. McCreary, Cleveland, Ohio, of counsel, for defendant.

McNAMEE, District Judge.

In its Complaint the Government prays for the assessment of a penalty against the defendant not to exceed $500 and for judgment in the amount assessed. The Government's claim is based upon an alleged violation of the following part of Section 673, Title 46 U.S.C.A.:

"No licensed officer or seaman in the deck or engine department of any tug documented under the laws of the United States (except boats or vessels used exclusively for fishing purposes) navigating the Great Lakes, harbors of the Great Lakes, and connecting and tributary waters between Gary, Indiana; Duluth, Minnesota; Niagara Falls, New York; and Ogdensburg, New York, shall be required or permitted to work more than eight hours in one day except in case of extraordinary emergency affecting the safety of the vessel and/or life or property."

The above provisions of the statute were incorporated in Section 673 by the amendment of June 23, 1938. Prior to that time the statute contained inter alia a provision, still in effect, which is applicable to all merchant vessels of the United States of more than 100 tons gross and which provides:

"* * * nor shall any licensed officer or seaman in the deck or engine department be required to work more than eight hours in one day."

The statute prescribes a penalty not to exceed $500 for each violation. The full text of Section 673 appears in the margin.[1]

---

1. 46 U.S.C.A. § 673.

"Requirements as to watches; duties of seamen; hours of work; penalty; right of seamen to discharge; effective date

"In all merchant vessels of the United States of more than one hundred tons gross, excepting those navigating rivers, harbors, lakes (other than Great Lakes), bays, sounds, bayous, and canals, exclusively, the licensed officers and sailors, coal passers, firemen, oilers, and water tenders shall, while at sea, be divided into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel: *Provided*, That in the case of radio-telegraph operators this requirement shall be applicable only when three or more radio officers are employed. No li-

censed officer or seamen in the deck or engine department of any tug documented under the laws of the United States (except boats or vessels used exclusively for fishing purposes) navigating the Great Lakes, harbors of the Great Lakes, and connecting and tributary waters between Gary, Indiana; Duluth, Minnesota; Niagara Falls, New York; and Ogdensburg, New York, shall be required or permitted to work more than eight hours in one day except in case of extraordinary emergency affecting the safety of the vessel and/or life or property. The seamen shall not be shipped to work alternately in the fireroom and on deck, nor shall those shipped for deck duty be required to work in the fireroom, or vice versa; nor shall any licensed officer or seamen in the deck or engine department be required to work more than eight hours in

The Government alleges that defendant violated the provisions of the statute first quoted above by requiring and/or permitting its employees to work in the waters of the Great Lakes on the Tug Kansas more than 8 hours on July 15, 1956. In its Answer defendant denies that it required the employees to work more than 8 hours on July 15, 1956, but admitted that its employees were permitted to work beyond the statutory period on the day in question. After submission of the case the parties executed and filed a stipulation in which they agreed that defendant permitted its employees to work on the Tug Kansas more than 8 hours on June 15, 1956, thereby eliminating the dispute on the issue whether defendant required its employees to work in excess of the prescribed period. The stipulation and the admissions in the pleadings disclose there is no genuine issue as to any material fact.

The undisputed facts are: On June 15, and June 16, 1956, the defendant, Buckeye Steamship Company, a Delaware corporation licensed to do business in Ohio, was the owner of the Steamship Princeton and the Tug Kansas which was documented under the laws of the United States. On or about 5:25 A.M. on June 15, 1956, Captain John McMahon, the Master of the Steamship Princeton, Earl Arnett, Second Engineer, George Green, the Wheelsman, and Raymond Erkkila, Fireman, all of whom were regularly employed as officers and members of the crew of the Steamer Princeton, began the operation and navigation of the Tug Kansas and assisted five barges through the canal locks at Sault Ste. Marie, Michigan and adjacent waters connecting the Great Lakes. The aforesaid employees of defendant were acting in the course and scope of their employment and under the defendant's direction and control. The defendant permitted and paid said employees to work on board the Tug Kansas voluntarily and of their own free will continuously from 5:25 A.M. June 15, 1956, to about 3:30 A.M. June 16, 1956, during which time there was no extraordinary emergency affecting the safety of the vessel and/or life or property.

Both parties have moved for summary judgment. The plaintiff's Motion is predicated upon the admitted facts which disclose defendant's violation of the statute in permitting its employees to work beyond the statutory period. Defend-

one day; but these provisions shall not limit either the authority of the master or other officer or the obedience of the seamen when in the judgment of the master or other officer the whole or any part of the crew are needed for maneuvering, shifting berth, mooring, or unmooring, the vessel or the performance of work necessary for the safety of the vessel, her passengers, crew, and cargo, or for the saving of life aboard other vessels in jeopardy, or when in port or at sea, from requiring the whole or any part of the crew to participate in the performance of fire, lifeboat, or other drills. While such vessel is in a safe harbor no seaman shall be required to do any unnecessary work on Sundays or the following-named days: New Year's Day, the Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day, but this shall not prevent the dispatch of a vessel on regular schedule or when ready to proceed on her voyage. And at all times while such vessel is in a safe harbor, eight hours, inclusive of the anchor watch, shall constitute a day's work. Whenever the master of any vessel shall fail to comply with this section and the regulation issued thereunder, the owner shall be liable to a penalty not to exceed $500, and the seamen shall be entitled to discharge from such vessel and to receive the wages earned. But this section shall not apply to vessels engaged in salvage operations: *Provided*, That in all tugs and barges subject to this section when engaged on a voyage of less than six hundred miles, the licensed officers and members of crews other than coal passers, firemen, oilers, and water tenders may, while at sea, be divided into not less than two watches, but nothing in this proviso shall be construed as repealing any part of section 222 of this title. This section shall take effect six months after June 25, 1936. Mar. 4, 1915, c. 153, § 2, 38 Stat. 1164; June 25, 1936, c. 816, § 2, 49 Stat. 1933; June 23, 1938, c. 597, 52 Stat. 944; May 12, 1948, c. 286, § 4(a), 62 Stat. 233."

ant concedes that if the applicable provisions of the statute are valid a penalty must be assessed. Defendant contends, however, that the statute is unconstitutional and void and bases its Motion for Summary Judgment on such contention. Defendant's principal ground of attack is that the statute is unreasonable and arbitrarily discriminates against owners and masters of tugs operating on the Great Lakes and in favor of owners and masters of tugs operating elsewhere in violation of the Due Process Clause of the 5th Amendment to the Constitution of the United States. The burden of defendant's argument is that, except in cases of extraordinary emergency, masters and owners of tugs operating on the Great Lakes are prohibited absolutely from requiring or permitting officers and seamen on such tugs from working more than 8 hours in one day while officers and seamen on all other vessels, including tugs, navigating in other waters of the United States may work more than 8 hours a day provided they do so voluntarily. It is urged that a different classification of tugs on the Great Lakes from tugs operating elsewhere cannot be justified because of the similarity of the work, weather, wind and other conditions affecting the health, safety and welfare of seamen on tugs in all navigable waters subject to the jurisdiction of the United States.

The constantly recurring question of legislative classification and the principles that govern its determination are stated clearly in Williamson v. Lee Optical Co., 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563, in the following language:

"The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Tigner v. State of Texas, 310 U.S. 141, 60 S.Ct. 879, 84 L.Ed. 1124. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086. The legislature may select one phase of one field and apply a remedy there, neglecting the others. A. F. of L. v. American Sash Co., 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222. The prohibition of the Equal Protection Clause goes no further than the invidious discrimination."

While the above statements were made in a case involving the constitutionality of a state statute under the Due Process and Equal Protection clauses of the 14th Amendment, they apply with equal if not greater force where the constitutionality of an Act of Congress is under attack as being violative of the Due Process clause of the 5th Amendment. In Chas. C. Stewart Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 889, 81 L.Ed. 1279, the court held that: "A classification supported by considerations of public policy and practical convenience, which would be valid under the equal protection clause of the Fourteenth Amendment if adopted by a State, is lawful, a fortiori, in the legislation of Congress, since the Fifth Amendment contains no equal protection clause." See Headnote 3, 301 U.S. at page 584, 57 S.Ct. at page 889. See also Quong Wing v. Kirkendall, 223 U.S. 59, 62, 32 S.Ct. 192, 56 L.Ed. 350. Congressional legislation cannot be struck down unless it is clear that the discriminatory effect of the statute under attack is "so arbitrary and injurious" as to violate the Due Process clause of the 5th Amendment. Detroit Bank v. United States, 317 U.S. 329, 338, 63 S.Ct. 297, 301, 87 L.Ed. 304; Currin v. Wallace, 306 U.S. 1, 13, 59 S.Ct. 379, 83 L.Ed. 441. In National Labor Relations Board v. Jones & Laughlin Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, the Supreme Court considered a challenge to the National Labor Relations Act on the ground that it applied restraints against employers but employed no similar restraints against the

wrongful conduct of employees. The court pointed out the general rule that "Legislative authority, exerted within its proper field, need not embrace all the evils within its reach." In A. F. of L. v. American Sash Co., 335 U.S. 538, 69 S.Ct. 258, 259, 93 L.Ed. 222, the court, in referring to state laws, said:

"* * * that the existence of evils against which the law should afford protection and the relative need of different groups for that protection 'is a matter for the legislative judgment.'"

In passing upon the validity of the classification here in question, it is not the province of the Court to examine evidence for the purpose of deciding whether Congress has decided that question correctly. The Court's function is only to determine whether it is possible to say that the legislative decision was without rational basis. Clark v. Paul Gray, Inc., 306 U.S. 583, 594, 59 S.Ct. 744, 83 L.Ed. 1001. The determination of the legislature is presumed to be supported by facts known to it unless facts judicially known or proved preclude that possibility. Ibid, 306 U.S. at page 594, 59 S.Ct. at page 750. It is for Congress and not the courts to balance the advantages and disadvantages of the classification. Williamson v. Lee Optical Co., 348 U.S. 483, 487, 75 S.Ct. 461, 99 L.Ed. 563.

It is apparent from the foregoing that in assailing the Congressional classification defendant has assumed a heavy burden of proof. To sustain such burden defendant relies on an affidavit of Laurence C. Turner, president of The Great Lakes Towing Company. It appears that Mr. Turner had abundant opportunity to observe the conditions affecting the operation of tugs on the coastal waters of the United States as well as on the Great Lakes. In his affidavit he outlined the apparent similarity of the operation of tugs on the Great Lakes and those operating in the waters of the Atlantic and Pacific Oceans and the Gulf of Mexico. He asseverates that conditions of weather, wind, seas and visibility which might affect the safety of tugs and their crews are no more hazardous in the Great Lakes than in other waters of the United States where tugs operate. Mr. Turner expressed the opinion that all factors affecting the safety, health and welfare of crews on tugs in the Great Lakes are also present to the same degree in other waters of the United States. Without questioning Mr. Turner's experience, knowledge or veracity, it must nevertheless be said that his statements and opinions are of insufficient probative value to establish the invalidity of the classification against which defendant inveighs.

It is unnecessary here to rely upon the presumption that Congress had sufficient facts before it on which to base its judgment as to the desirability and need for classification.

The history of the Act of June 23, 1938, discloses that Congress, through an appropriate committee, received considerable information relative to the need for legislation here assailed. In March 1938 a committee of Merchant Marine and Fisheries of the House of Representatives held hearings on three bills designed to limit the working hours of seamen on certain vessels. Among the bills was H.R. 9388, which in many respects was similar to S.B. 2132, which was enacted into law. However, H.R. 9388 contained a prohibition against requiring seamen on Great Lakes tugs to work more than 8 hours a day, whereas the provision in S.B. 2132, as enacted, was against requiring or permitting a longer working day than 8 hours. There was testimony at the hearing that many if not most tugs were less than 100 tons gross. By reason of that fact most of the seamen working on tugs were not included within the protection of the provision of Section 673 prohibiting owners and masters of merchant vessels of more than 100 tons gross from requiring their licensed officers or seamen to work more than 8 hours a day. It was stated that as a consequence of such exclusion tugmen on the Great Lakes were required

to work 12 hours per day regularly and on occasion for as long as 13 and 13½ hours a day. According to testimony at the Congressional hearing, tugmen working in and around the port of New York were protected by a collective bargaining agreement from being required to work more than 8 hours a day. There was testimony before the Committee relative to the concentration in a few hands of the ownership of tugs on the Great Lakes. It was also developed at the hearing that tugmen on the Great Lakes were unable to work as such for several months of the year because of freezing of the waters on the Great Lakes during the winter season and that no comparable condition existed in or around the ocean ports. Other factors relative to conditions of work peculiar to the Great Lakes were presented to the Committee. It is apparent, therefore, that Congress had before it adequate factual data upon which to base a decision as to the need and desirability of the legislation here in question. In adopting the legislation Congress was acting pursuant to its powers under the commerce clause. That Congress has the right to classify is not open to question. The power of classification implies a broad discretion in the exercise of that power. Upon an examination of the record it cannot be said that Congress exercised its power arbitrarily nor does it appear that the legislation applicable only to tugs on the Great Lakes is without rational basis. Defendant argues that the legislation is invalid because it does not apply uniformly to all tugs under the jurisdiction of the United States. There is no requirement of nation-wide uniformity in connection with the commerce clause such as exists in respect of duties, imposts and excise taxes. Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 83 L. Ed. 441. No claim is or can be made that the legislation does not apply uniformly to all those included within the designated class. The need for special legislation for waterborne commerce on the Great Lakes frequently has been recognized by Congress. Such legislation includes statutes relating to licenses for fishing vessels (46 U.S.C.A. § 263); transportation of merchandise between ports in the United States (46 U.S.C.A. § 883); federal ship mortgage insurance (46 U.S.C.A. § 1274); carrying passengers (46 U.S.C.A. §§ 458, 459, 460, 460a); regulations concerning lifeboats (46 U.S.C.A. § 481); load lines (46 U.S.C.A. § 88a); radiotelegraph operators (46 U.S.C.A. § 229g); pursers and surgeon (46 U.S.C.A. § 246). Nor is there any merit to the contention that the legislation interferes with liberty to contract in relation to labor. The liberty of contract doctrine, which was upheld in Lochner v. State of New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937; Coppage v. State of Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441 and Adkins v. Children's Hospital, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785, has been repudiated by the Supreme Court in recent cases. See Day-Brite Lighting, Inc. v. State of Missouri, 342 U.S. 421, 423, 72 S.Ct. 405, 96 L.Ed. 469. Congressional action in fixing maximum hours of labor on the Railroad Hours of Service Act, 45 U.S. C.A. § 62, has been upheld as constitutional. Baltimore & Ohio Railroad Co. v. Interstate Commerce Commission, 221 U.S. 612, 31 S.Ct. 621, 55 L.Ed. 878. The additional contentions advanced by defendant have been considered and found to be without merit. Defendant's contention that the legislation in question violates the due process clause of the 5th Amendment has not been sustained. See Williamson v. Lee Optical Co.; Stewart Machine Co. v. Davis; National Labor Relations Board v. Jones & Laughlin; A. F. of L. v. American Sash Co., and Clark v. Paul Gray, Inc., supra.

For the reasons assigned I hold that the legislation is valid.

Defendant's Motion for Summary Judgment is overruled.

Plaintiff's Motion for Summary Judgment is granted.

Defendant has been afforded an opportunity by the Government, acting through the United States Coast Guard, to sub-

mit facts and circumstances, if any, in extenuation of the violation but has failed to do so. Accordingly the penalty in the sum of $500 heretofore assessed against defendant by the U. S. Coast Guard is confirmed, and judgment may be entered against defendant in the above amount.