UNITED STATES of America

v.

Thomas H. CLEAVENGER, Admr. of the
Estate of Lurline B. (App) Smith, Dec.,
Estate of Lurline B. (App) Smith, Dec.,
Barbara Cleavenger, John O. App,
Thomas H. Cleavenger, Individually,
and Ada Grace Allt. Ernest Rueth, In-
tervenor.

Civ. No. 4237.

United States District Court,
N. D. Indiana,
Hammond Division.
April 14, 1971.

William C. Lee, U. S. Atty., J. Frank Kimbrough, Asst. U. S. Atty., Bernard J. Boyle, Reg. Counsel's Office IRS, Indianapolis, Ind., for plaintiff.

Owen W. Crumpacker, Hammond, Ind., for defendants.

Tinkham, Beckman, Kelly & Singleton, Hammond, Ind., for intervenor.

## MEMORANDUM OPINION

BEAMER, District Judge.

*Facts:*

Lurline B. (App) Smith died testate on July 14, 1958. Thomas H. Cleavenger was appointed administrator of the estate. On October 14, 1959, the administrator filed an estate tax return showing a tax due of $32,512.67. The government assessed a tax liability of $32,640.77 against the estate on November 6, 1959. A notice of a lien for this amount was filed by the government with the Recorder of Lake County, Indiana on February 19, 1960. On September 15, 1961, an additional assessment of $37,321.11 was made by the government as a result of a re-evaluation of the assets in the estate. A third and final assessment against the estate was made on June 29, 1962 in the amount of $7,020.86. None of the amounts assessed have ever been paid. On September 27, 1963, Ernest Rueth obtained a state court judgment against the estate of Lurline B. Smith for $10,608.07. On March 9, 1964, the Lake Superior Court, Room 1, entered a judgment for the Internal Revenue Service for $87,785.77. On May 28, 1965, the Lake Superior Court, Room 1, entered a judgment for administrator's fees in the amount of $10,080.67 and for attorney's fees in the amount of $19,905.36 in the estate of Lurline B. (App) Smith.

On August 25, 1965, the government filed suit in this Court against the Estate of Lurline B. (App) Smith, Thomas Cleavenger, as administrator of the estate, Barbara Cleavenger, and John O. App. The complaint seeks judgment against the estate and the administrator for $72,019.52 plus interest; the complaint also requests that this liability be declared a lien against the property in the estate, and that the property be sold to satisfy the lien.

On September 16, 1965, the government filed a second notice of a federal tax lien. This notice covered the amounts from the second and third assessments (in 1961 and 1962) and was for $44,341.97.

On September 11, 1969, this Court granted the petition of Ernest Rueth to intervene in this suit. The intervenor's complaint requested that the Court determine the priority of Rueth's judgment for $10,608.07 and pay it out of the proceeds of the sale of estate property.

On September 15, 1969, a court trial was held and the matter was taken under

advisement. On January 14, 1970, the Court entered an order staying the proceeding until the government joined Ada Grace Allt and Thomas H. Cleavenger, individually, as defendants since the Court was of the opinion that they were necessary parties under the requirements of 26 U.S.C. § 7403(b).

The government amended its complaint to add Cleavenger, individually, and Allt as parties defendant. The parties appeared and answered. On June 30, 1970, the government moved for summary judgment against all parties. A hearing was held on the motion and briefs have been filed.

*Jurisdiction*:

The authority of the Court in this case is to an extent limited by the nature of the property here involved. The government has requested that the estate tax liability be declared a lien on, and foreclosed against, the following pieces of property (as lettered in the complaint):

(a) 30 Douglas Street, Hammond, Indiana;

(d) 209–211 Ridge Road, Munster, Indiana;

(e) 8241 Hohman Avenue, Munster, Indiana.[1]

Property (e) was owned by the decedent and Barbara Cleavenger as joint tenants with the right of survivorship. This property *did not go into probate*, but passed automatically at the death of Lurline B. Smith. It was included in the gross estate for tax purposes. There is no evidence that Barbara Cleavenger contributed to the payment for acquisition of this property.

Properties (a) and (d) went into probate. Under the will of Lurline B. Smith, property (a) was to go to John O'Neal App. Pursuant to an order of the probate court, this property was sold to satisfy a judgment against the estate in favor of the John Hancock Mutual Life Insurance Company. The government consented to the sale, provided the lien of the United States would attach to the proceeds and the priority of the United States' claim would remain undisturbed. Approximately $60,000.00 remained after the satisfaction of the John Hancock claim.

Property (d) was devised to Barbara Cleavenger subject to the payment to Mrs. Grace Allt of the sum of $150.00 per month for so long as she shall live, the money to be paid out of the income, rents and profits of the real estate. This property is still under the jurisdiction of the probate court.

The government had authority under 26 U.S.C. § 7403 to bring this action to enforce a tax lien, or to subject property to payment of delinquent taxes. The jurisdiction of this Court is based on 28 U.S.C. §§ 1340 and 1345. Under the provisions of § 7403(c), this Court has authority "to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property". The fact that some of the property involved here is within the control of the probate court does not divest this Court of jurisdiction, although

---

I. This property is described with more particularity as follows:

> All that part of the following described tract lying North of the North line of Ridge Road, to-wit: Part of Lot #1 in Arlie Jabaay's Subdivision (in Town of Munster) as per plat thereof recorded in Plat Book 2, page 42 in the Office of the Recorder of Lake County, Indiana, being the West 50 feet of the following described part of Lot #1, to-wit: beginning at a point in the center line of Ridge Road 90 feet southeasterly from the intersection of said road and the East line of Hohman Street as established June 1, 1910; thence North and parallel to the East line of said Hohman Street and along the East line of Lot 42 in Hollywood Manor as recorded in Plat Book 19, page 26, a distance of 170 feet, then East at right angles 214.1 feet to the East line of said lot; thence South along the East line of said Lot #1, 205.93 feet to the southeast corner thereof, being the center line of Ridge Road; thence northwesterly along the center line of said lot 215.41 feet to the place of beginning, commonly known as 211 Ridge Road, Munster, Indiana.

it does restrict the relief which can be granted. In Markham v. Allen, 326 U. S. 490, 494, 66 S.Ct. 296, 298, 90 L.Ed. 256, 259–260 (1946) the Supreme Court made the following statement:

"But it has been established by a long series of decisions of this Court that federal courts of equity have jurisdiction to entertain suits 'in favor of creditors, legatees and heirs' and other claimants against a decedent's estate 'to establish their claims' so long as the federal court does not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the custody of the state court. * * *

"Similarly while a federal court may not exercise its jurisdiction to disturb or affect the possession of property in the custody of a state court ° * * * it may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court. * * * " [Citations omitted.]

The government has contended that the exclusive jurisdiction of the state court over the property in the probate proceeding has been relinquished under Burns' Ind.Anno.Stat. § 7–816, I.C.1971, 29–1–14–16, which provides in part:

"[N]o proceedings shall be instituted before the end of six (6) months from the death of the decedent to enforce the lien of any judgment rendered against the decedent in his lifetime upon real estate or to enforce any decree specifically directing the sale of such real estate or to enforce any decree specifically directing the sale of such real cedent * * *; and if the personal representative shall be diligently prosecuting his proceedings to sell the real estate of the deceased for the purpose of making assets to discharge such liens, further proceedings for the sale thereof by the holders of liens

thereon shall be stayed, upon the application of the personal representative. * * * "

■ This statute clearly does not give this Court control over the property in the probate proceedings. Section 7–816 applies only to debts of the decedent incurred during his lifetime. The claims involved in this case are those against the estate of the decedent.

Thus, this Court has authority to determine the priority of all claims raised here, including those of the intervenor. Although property (e) may be available to this Court to satisfy these claims, property (d) and the proceeds from the sale of property (a) are within the control of the probate court, and thus are not subject to order of this Court.

*Tax Liability:*

■ The three estate tax assessments made by the government against the Estate of Lurline B. (App) Smith, in the amount of $72,019.52, establish a *prima facie* case of liability. United States v. Rindskopf, 105 U.S. 418, 26 L.Ed. 1131 (1881); Wickwire v. Reinecke, 275 U.S. 101, 48 S.Ct. 43, 72 L.Ed. 184 (1927); United States v. Miller, 318 F.2d 637 (7th Cir. 1962). The amounts due the government under these assessments have not been challenged. This Court, therefore, finds that the United States government is entitled to $72,019.52 plus 6% interest from the dates of assessment.

*Tax Liens:*

■ There are two types of tax liens which may be available to the government to enforce the tax liability in this case. What is referred to as the "general tax lien" is created by the provisions of 26 U.S.C. § 6321:

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount * * * shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

This general tax lien can be used to enforce all types of federal taxes, including estate taxes.

■■ The second type of lien which may be available to the government is the "special estate tax lien" provided in 26 U.S.C. § 6324. This lien applies only to estate taxes. Section 6324(a) (1) provides:

"Unless the estate tax * * * is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death * * *."

The general tax lien and the special estate tax lien operate completely independently of each other. Detroit Bank v. United States, 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304 (1943). Either or both may be available in a particular situation. The differences between these two liens were set out by the Supreme Court in *Detroit Bank*, at 317 U.S. at 334–335, 63 S.Ct. at 300, 87 L.Ed. 310:

"The [general tax lien] is upon all the property of the person liable for the tax, while the [special estate tax lien] attaches only to the property included in and taxed as the gross estate not used to pay administration expenses. The [general tax lien] continues until the tax liability is paid while the [special estate tax lien] continues for ten years from the death of the decedent. Of particular significance is the difference in time when the liens attach under the two sections. Under the [general tax lien provisions] there is no lien and no notice can be recorded until there has been a demand by the collector and a refusal to pay it by the taxpayer. Under [the special estate tax lien provisions] as has been stated, the lien arises on the death of the decedent and becomes effective against purchasers and mortgagees without assessment or demand and obviously before it would be possible to record a notice of lien under the [general tax lien provisions]."

It is generally to the government's advantage to have an enforceable special estate tax lien since it is effective at an earlier date than the general tax lien. However, it is the opinion of this Court that the special estate tax lien is no longer available to the government in this case because it terminated on July 14, 1968, 10 years from the death of Lurline B. Smith.

The government has contended that the 10 years mentioned in § 6324(a) is merely a period of limitations, and the filing of the suit in this Court within the 10 year period was sufficient to preserve the special estate tax lien. However, a comparison of the special estate tax lien provisions, the general tax lien provisions, and the statute of limitations provisions of Title 26 makes it clear that the government's position is not supported by the language of the statutes.

All taxes created by Title 26 of the United States Code are subject to the specific limitations periods provided in §§ 6501 and 6502 of Title 26. Under § 6501 the amount of any tax must, in most cases, be assessed within 3 years after the tax return is filed. Under § 6502 the government is given 6 years after the date of assessment (unless additional time is agreed upon) to levy or bring suit to collect the tax.

Both the general tax lien provisions (§ 6322) and the special estate tax lien provisions (§ 6324) mention the fact that the liens may become "unenforceable by reason of lapse of time". This is obviously a reference to the separate limitations provided by §§ 6501 and 6502. When the "unenforceability" language was added to § 6324, the Senate report commented that the phrase was added to the estate and gift tax provisions to make "it clear that these special liens are to terminate before the expiration of the 10 years at any time the estate or gift tax liability becomes unenforceable by reason of the running of the statute of limitations on collections (usually a 6 year period after assessment)." 1966

U.S.Code Cong. & Adm.News 3735–6. It seems unlikely that the 10 year period in § 6324 was intended as a period of limitations since the language of § 6324 specifically makes applicable the general periods of limitations of Title 26.

■ A much more reasonable interpretation of § 6324 is that the 10 year period is the duration of the lien. Omitting from § 6324(a) (1) the language which refers to §§ 6501 and 6502, and language dealing with matters not pertinent here, the statute reads as follows:

"[T]he estate tax * * * shall be a lien upon the gross estate of the decedent for 10 years from the date of death * * *."

This language is similar to the language of § 6322 concerning the period (duration) of the general tax lien which reads in part:

"[T]he lien imposed * * * shall continue until the liability for the amount so assessed * * * is satisfied * * *."

It would certainly appear from this language that while the general tax lien has an unlimited duration, the life of the special estate tax lien is limited to a period of 10 years. This would seem to be the opinion held by the Supreme Court in *Detroit Bank, supra,* when it commented, 317 U.S. at 335, 63 S.Ct. at 300, at 87 L.Ed. 310:

"The [general tax lien] continues until the tax liability is paid while the [special estate tax lien] continues for ten years from the death of the decedent."

There is only one reported decision where the meaning of the 10 year period in § 6324 was directly involved. In Kaufman v. Herter, 24 Misc.2d 187, 194 N. Y.S.2d 848 (1959), it was held:

"The [special estate tax] lien does not, however, avail the government as to Mrs. Herter's devised interest because the lien was good for only 10 years from the date of her husband's death (§ 827; Detroit Bank case, supra, p. 335, 63 S.Ct. 300). The death oc-

curred on March 14, 1945 and the lien, therefore, expired on March 14, 1955. The 1954 assessment merely made the amount of the estate tax definite and certain. It did not purport to extend the duration of the lien, nor could it legally do so in the absence of a statutory provision extending the lien in the case of an assessment within the 10-year period."

■ The government has been unable to cite any court decisions, legislative history, or statutory provisions that would lead to another result. It may seem unfair that in some situations the special estate tax lien will cease before the government can foreclose on it. However, the Court is limited to interpreting and applying the statute as it is written. The Court concludes from the plain language of § 6324 that the special estate tax lien on the property in the estate of Lurline B. (App) Smith expired on July 14, 1968.

■ The government in 1964 did obtain a judgment in state court on the tax liability of the estate. However, it is not contended that this judgment extended the life of the special estate tax lien. Neither the judgment nor the judgment lien merges with the tax lien. United States v. Hodes, 355 F.2d 746 (2d Cir. 1966), cert. dismissed 386 U.S. 901, 87 S.Ct. 784, 17 L.Ed.2d 779 (1967); United States v. Overman, 424 F.2d 1142 (9th Cir. 1970).

■ Although the special tax lien has expired, the government still has a general tax lien "upon all property and rights to property" of any person who is liable to pay the tax and who has failed to do so. 26 U.S.C. § 6321. Under the provisions of 26 U.S.C. § 2002 the executor is responsible for the payment of the estate tax. The will of Lurline B. (App) Smith named Owen W. Crumpacker executor of her estate. There is nothing before this Court which would show whether Mr. Crumpacker ever qualified as executor. Mr. Crumpacker is not a party to this law suit, but is one of the attorneys representing the defend-

ants. Thomas H. Cleavenger is the duly qualified administrator of the estate, and thus stands in the place of the executor. Under Indiana law:

> "Every personal representative shall have a right to, and shall take, possession of all the real and personal property of the decedent * * *. He shall pay the taxes and collect the rents and earnings thereon until the estate is settled or until delivered by order of the court to the distributees." Burns' Ind.Anno.Stat. § 7–701, I.C. 1971, 29–1–13–1.

This statute thus gives the administrator "rights to property" in the probate estate, which would in this case include property (d) and the proceeds from the sale of property (a). The general tax lien would apply to this property under the provisions of 26 U.S.C. § 6321.

■ Property (e), which was owned in joint tenancy and thus went directly to Barbara Cleavenger, is not subject to the control of the administrator. However, the executor or administrator is not the only person liable to pay the estate tax. 26 U.S.C. § 6324(a) (2) provides:

> "If the estate tax * * * is not paid when due, then the * * * surviving tenant * * * who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, inclusive, to the extent of the value at the time of the decedent's death, of such property, shall be personally liable for such tax."

Property (e) was included in, and taxed as a part of, the gross estate of Lurline B. (App) Smith under 26 U.S.C. § 2040. The tax, though due, has not been paid. Thus, Barbara Cleavenger has become a person liable to pay the estate tax. Under § 6321 the general tax lien may be applicable to her assets, including property (e).

As to property (d) and the proceeds from the sale of property (a), the government complied with the procedural requirements for assessing the liability and filing suit to collect the tax. All three assessments against the estate were made within three years after the filing of the estate tax return, as required by § 6501. Suit was commenced to enforce the liability within six years after the first assessment, as required by § 6502. Since these procedures prevented these general tax liens from becoming unenforceable by reason of lapse of time, the liens will continue on the estate property "until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied * * *." § 6322.

■ However, with respect to property (e), the Court is unable to determine at this time whether the general tax lien remains enforceable. Title 26 U.S.C. § 6901 provides a separate period of limitations for assessment against a transferee of property of a decedent. The definition of transferee, in § 6901 (h), would include Barbara Cleavenger. There is no evidence whether the government ever assessed against her.

*Other Claims:*

■ A judgment for $10,608.07 in favor of Ernest Rueth and against the estate of Lurline B. (App) Smith was granted by the Lake Superior Court, Room No. 2, on September 27, 1963. The judgment was recorded and indexed in the court's judgment docket on the same day. Such a judgment "is a mere allowance of the claim, to be paid in due course of administration". Maddox v. Maddox, 97 Ind. 537 (1884). See Burns' Ind. Anno.Stat. § 7–813, I.C.1971, 29–1–14–13. A judgment against an estate does not create a judgment lien. Judgment liens are statutory, and did not exist at common law. Taylor v. McGrew, 29 Ind. App. 324, 64 N.E. 651 (1902); In re Webb, 160 F.Supp. 544 (S.D.Ind.1958). There is no Indiana statute which would make the judgment of the intervenor a lien against the estate property. It is not necessary here to determine whether the intervenor has an equitable lien against the property in the probate estate.

The administrator of the estate of Lurline B. (App) Smith, Thomas Cleavenger,

and his attorney, Owen Crumpacker, also have claims pending against the estate. On May 28, 1965, the probate court entered an order approving, and authorizing payment of, administrator's fees of $10,080.67 and attorneys' fees of $19,-905.36 arising out of the administration of the estate of Lurline B. (App) Smith.

In addition to the amounts above, the administrator is seeking $12,865.84 and his attorney is seeking $26,187.88 for fees incurred in the administration of the estate of John M. App, husband of Lurline B. (App) Smith, who predeceased her by about two years. These fees were not ordered paid out of the assets in the estate of John M. App by the Lake Superior Court, Room 2, but were instead "transferred" to the estate of Lurline B. (App) Smith which is being probated in Lake Superior Court, Room No. 1. Although these sums may be claims against the estate of Lurline B. (App) Smith, it is clear that they are not costs or expenses of administration of the estate of Lurline B. (App) Smith.

The record shows that John O'Neal App made advancements of $30,380.29 to the estate of John M. App. This claim was also "transferred" by the Lake Superior Court, Room No. 2, to the estate of Lurline B. (App) Smith in Room No. 1.

All of these claims have been made against the estate of Lurline B. (App) Smith in the probate court. None of these claims are applicable to property (e) which did not go into probate. Whether the land in the estate of Lurline B. (App) Smith is subject to equitable liens for these claims is a matter which need not be determined here.

*Priorities:*

It is not challenged that the expenses of the administrator and his attorney, incurred in the administration of the estate of Lurline B. (App) Smith, have priority over all other claims. Thus, the administrator's fee of $10,080.67 and the attorney's fee of $19,905.36 should be first paid out of the estate.

On the other hand, the additional sums claimed by the administrator and his attorney do not have priority here since they arose out of the administration of the estate of John M. App. As to the estate of Lurline B. (App) Smith, they are merely claims; they are not costs and expenses of administration.

After the costs of administration, the general tax liens of the federal government have priority. Under the provisions of 26 U.S.C. § 6323, the general tax liens have validity against purchasers, secured creditors, mechanic's lienors, and judgment lien creditors from the dates that notice of assessment were filed (in 1960 & 1965). None of the parties here fall within those categories. As to persons not within those categories, the general tax liens took effect on the dates of assessment (in 1959, 1961 & 1962) under the provisions of 26 U.S.C. § 6322. There were no liens against estate property prior to those dates. Therefore, the government's tax liens take precedence over the other claims against the estate.

As to the priority of the remaining claims, this Court feels that it should abstain, leaving the determination to the probate court. The property which is subject to payment of these claims is within the control of the probate court. Whether the claims constitute liens and which claims have priority are matters of state law which must be determined in the normal cause of the probate proceedings.

However, this Court retains jurisdiction of this case for the purpose of determining the lien rights, if any, against property (e) in the event the parties cannot agree.