Jean **LINKENHOKER** et al.

v.

Caspar **WEINBERGER**, Secretary, Department of Health, Education and Welfare, and David T. Mason, Secretary, Maryland Department of Employment and Social Services, Individually and in their official capacities.

**Civ. A. No. N–74–646.**

United States District Court,
D. Maryland.

Jan. 8, 1975.

---

C. Christopher Brown and Curtis L. Decker, Legal Aid Bureau, Inc., Baltimore, Md., for plaintiffs.

George Beall, U. S. Atty., for the District of Maryland, John W. Sheldon and Virginia S. Draper, Asst. U. S. Attys. (and Phillip Sunderland, Dept. of Health, Education and Welfare), for defendant Weinberger.

Francis B. Burch, Atty. Gen., of Maryland and Joel J. Rabin, Theodore Losin and John K. Anderson, Asst. Attys. Gen., for defendant Mason.

NORTHROP, Chief Judge.

In this action plaintiffs, Jean Linkenhoker, Carolyn Jones and Annie Gray, challenge the validity of a federal regulation, 45 C.F.R. § 233.20(a)(11) (iv) & (v), promulgated by the Secretary of the Department of Health, Education and Welfare [hereinafter, "Secretary of HEW"]. Contrary to the import of the challenged regulation, plaintiffs request this Court to declare that all income earned through public service employment be completely disregarded for the purpose of determining eligibility under

the federally-assisted Aid to Families with Dependent Children (AFDC) program. 42 U.S.C. § 601 et seq. It is alleged by plaintiffs that the regulation is in contravention of 42 U.S.C. § 602(a)(19)(B) & (D). Additionally, plaintiffs allege that they are denied equal protection under the fifth and fourteenth amendments because the partial income disregard afforded to privately employed welfare recipients is not given to those welfare recipients who participate in the federally subsidized public service employment program. Finally, plaintiffs claim that the Maryland Department of Employment and Social Services has contravened its own regulation, Rule 7.02.09.06B(7)c(2), by refusing to grant a partial income disregard to public service employees. The matter is currently before the Court on cross-motions of the plaintiffs and Secretary of HEW for summary judgment. Plaintiffs' motion for certification as a class action has been withdrawn.

### I.

The facts supporting plaintiffs' allegations are undisputed. Prior to March, 1974, Ms. Linkenhoker and five of her children were totally supported by monthly public assistance payments of approximately $270 from the federally-assisted and Maryland-administered AFDC program. In March, 1974, under the terms of the federal public service employment program, 42 U.S.C. § 632(b)(3), Ms. Linkenhoker was employed as a community worker for the Southeast Community Organization at a gross monthly salary of $498.40. Pursuant to the regulation challenged in this proceeding, 45 C.F.R. § 233.-20(a)(11)(iv) & (v), Ms. Linkenhoker received notice from the Maryland Department of Employment and Social Services that, due to the earned income from her public service employment, she had been found ineligible for any further AFDC benefits.

The AFDC program began in 1935 as Title IV to the Social Security Act, 42 U.S.C. § 601 et seq. The original program did not condition eligibility or computation of benefits upon efforts by recipients to obtain active employment in the nation's work force. However, in 1967, Congress amended the Social Security Act to provide for the Work Incentive Program (WIN). Prior to 1971, the three components of the WIN program included:

. . . (1) (A) a program placing as many individuals as is possible in employment, . . . (2) a program of institutional and work experience training for those individuals for whom such training is likely to lead to regular employment, and (3) a program of *special work projects* for individuals for whom a job in the regular economy cannot be found. [Pub.L. 90–248, Title II, § 204(b), 81 Stat. 884 (1968), as amended 42 U.S.C. § 632(b) (1971) (emphasis added)].

In 1971, Congress amended the third component of the WIN program by abolishing special work projects and substituting in their place a program of public service employment. 42 U.S.C. § 632(b). By authorizing state welfare agencies to require, where appropriate, participation in a WIN program as a precondition to AFDC eligibility, Congress sought to curb the number of AFDC families and to encourage AFDC recipients to achieve economic independence through gainful employment. Woolfolk v. Brown, 358 F.Supp. 524, 526 (E.D.Va.1973).

In determining eligibility for AFDC benefits, the Social Security Act mandates that the state welfare agency shall take into consideration all other income and resources of children, relatives and other individuals living in the indigent family. 42 U.S.C. § 602(a)(7). The consideration of all other income is the starting point for determinations of AFDC eligibility. It is only by operation of 42 U.S.C. § 602(a)(8) that an exception is created to allow for the disregard of certain income. 42 U.S.C. § 602(a)(8)(A)(ii) provides:

(a) A State plan for aid and services to needy families with children must

. . .

. . . . .

(8) provide that, in making the determination [of eligibility] under clause (7), the State agency—

(A) shall with respect to any month disregard—

. . . . . .

(ii) in the case of earned income . . . the first $30 of the total of such earned income for such month plus one-third of the remainder of such income for such month *(except that the provisions of this clause (ii) shall not apply to earned income derived from participation on a project maintained under the programs established by section 632(b)(2) and (3) of this title)*; [emphasis added].

■ The above provision of the statute expressly provides that the disregard for the first $30 plus one-third of the remaining monthly income shall not apply to income earned from participation on a Section 632(b)(3) WIN program. The public service employment program in which plaintiffs participate is a Section 632(b)(3) program. The regulation challenged by plaintiffs is entirely consistent with the statutory exception set forth at 42 U.S.C. § 602(a)(8)(A) (ii) (cited above). The challenged regulation, 45 C.F.R. § 233.20(a)(11)(iv) & (v), provides as follows:

(iv) Earned income, for purposes of disregarding the first $30 plus one-third of the remainder of monthly earnings, pursuant to subdivision (ii)(b) of this subparagraph, includes work allowances and training incentive payments under the MDTA, payments under the Economic Opportunity Act of 1964, including payments to the beneficiaries of assistance under that act, and earnings under title I of the Elementary and Secondary Education Act. *The $30 plus one-third disregard does not apply to income from public service employment under WIN* nor to incentive payments or reimbursement of training-related expens-

es made by the manpower agency to any participant in institutional and work experience training under WIN.

(v) In summary, the effect of these regulations, for treatment of income and expenses under WIN, is as follows:

(a) For earned income from regular employment or on-the-job training, pursuant to section 432(b)(1) of the Act, the first $30 plus one-third of the remainder are disregarded, and work related expenses are then deducted from the remaining income;

(b) For institutional and work experience training, pursuant to section 432(b)(2) of the Act, the $30 monthly incentive payment and the reimbursement for training related expenses made by the manpower agency are totally disregarded; and

(c) *For public service employment, pursuant to section 432(b)(3) of the Act, work related expenses are deducted, but the $30 plus one-third disregarded does not apply.* [Emphasis added.]

Plaintiffs, as participants in the public service employment program, direct their challenge to the emphasized portions of the above regulation. In the view of this Court, these portions of the regulation are founded on, and go no further than, the mandate of the statute at 42 U.S.C. § 602(a)(8)(A)(ii).

In upholding the validity of the regulation challenged by plaintiffs, this Court notes that the real foundation of the complaint does not rest on the alleged invalidity of 45 C.F.R. § 233.-20(a)(11)(iv) & (v). The challenged regulation does no more than prohibit application of the $30 plus one-third disregard to public service employment income. Plaintiffs, however, request this Court to frame an order compelling defendants to grant to plaintiffs a one-hundred percent disregard of their entire public service employment income. The source of plaintiffs' request for a one-hundred percent disregard is found in two provisions of the Social Security

Act, 42 U.S.C. § 602(a)(19)(B) and (D), which provide, respectively, as follows:

(B) that aid under the plan will not be denied by reason of . . . an individual's participation on a project under the program established by section 632(b)(2) or (3) of this title;

. . . . . .

(D) that . . . *income derived from a special work project under the program established by section 632(b)(3) of this title shall be disregarded in determining the needs of an individual* under section 602(a)(7) of this title . . . . [Emphasis added.]

Plaintiffs argue that these provisions, and in particular 42 U.S.C. § 602(a)(19)(D), require defendants to grant a one-hundred percent disregard to all income derived from plaintiffs' public service employment, thereby making plaintiffs eligible for full AFDC benefits in addition to their public service employment income.

■ This Court is unable to find merit in plaintiffs' contention that 42 U.S.C. § 602(a)(19)(B) and (D) require state welfare agencies to grant, for purposes of determining AFDC eligibility, a one-hundred percent disregard of all income earned in the course of public service employment. In the view of this Court, such a construction of Section 602(a)(19)(B) and (D) is, for the reasons given below, totally unreasonable. "It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." 2A Sutherland, Statutory Construction § 45.12 (footnotes omitted).

Plaintiffs' construction of 42 U.S.C. § 602(a)(19)(B) and (D) is unreasonable for three reasons. First, it is clear that in passing the 1971 amendments to the Social Security Act, Pub.L. 92–223 (Dec. 28, 1971) [hereinafter, "Talmadge amendments"], Congress did not intend to authorize a double recovery to indigent welfare recipients. According to plaintiffs' own statement of facts, prior to participating in the public service employment program, Ms. Linkenhoker and five of her children were totally supported by monthly public assistance payments of $270. Since March, 1974, Ms. Linkenhoker has received a gross monthly salary of approximately $498.40 as a public service employee. If, as requested by plaintiffs, Ms. Linkenhoker's public service employment income were to be fully disregarded in determining AFDC eligibility, Ms. Linkenhoker would presumably receive $498.40 plus $270, or $768.40, as her monthly income. Such a double recovery for those former AFDC recipients who now work in public service employment programs would be totally inconsistent with congressional concern in 1971 to reduce the skyrocketing costs of federal welfare payments.[1]

Second, plaintiffs' construction of the statute is unreasonable because it completely overlooks the 1971 substitution of public service employment for special work projects as the third element of the WIN program. The provision of the statute relied upon by plaintiffs, 42 U.S.C. § 602(a)(19)(D), provides that " . . . income derived from a

1. House Report No. 92–231, 3 U.S.Code Cong. & Admin.News, 1972, p. 4990 provides:

Your committee's proposals for welfare reform have been formulated during a period of mounting Congressional concern, both over the extraordinary growth in the welfare rolls, particularly in the aid to families with dependent children (AFDC) program, and in the nature of that growth. . . . In 1967, a year during which the Congress sought to make major changes and improvements in the welfare system by passing the Social Security Amendments of 1967, the amount of Federal, State and local money being used for cash payments for AFDC recipients was about $2 billion. The estimate for 1972 is about $6.8 billion, or more than three times as much as was paid just five years earlier.

special work project under the program established by section 632(b)(3) of this title shall be disregarded in determining the needs of an individual . . . ." for AFDC benefits. The program of special work projects referred to in the statute has been abolished. Contrary to plaintiffs' argument, this Court does not believe that the program of public service employment, instituted by the Talmadge amendments of 1971, is one and the same with the old concept of special work projects. While both programs were located under the same provision of the statute, 42 U.S.C. § 632(b)(3), the federal-state funding arrangements are totally distinct under the new public service employment program. Unlike the old special works projects, the new program of public service employment calls for direct federal subsidies payable to the beneficiary's employer and in turn to the employee. The special works projects, however, operated under a unique sliding scale arrangement (described in detail hereinafter) whereby the state partially reimbursed the federal government for wages paid to employees of the special work projects. In view of the totally distinct arrangements for the financing of the two programs, it is unreasonable to assume, as do plaintiffs, that the one-hundred percent disregard which 42 U.S.C. § 602(a)(19)(D) provided for special work project income should apply to income from the entirely separate public service employment program.

Finally, plaintiffs' argument is unreasonable because it distorts entirely the original operation and effect which 42 U.S.C. § 602(a)(19)(D) had prior to the 1971 amendments. Section 602(a)(19)(D) was originally modified and limited by 42 U.S.C. § 602(a)(19)(E). It was Section 602(a)(19)(E) which set forth the cumbersome sliding scale arrangement for federal-state financing of special work projects. Section 602(a)(19)(E) provided as follows:

> (E) that, with respect to any individual referred pursuant to subparagraph (A) who is participating in a special work project under the program established by section 632(b)(3) of this title, (i) the State agency, after proper notification by the Secretary of Labor, will pay to such Secretary (at such times and in such manner as the Secretary of Health, Education, and Welfare prescribes) the money payments such State would otherwise make to or on behalf of such individual (including such money payments with respect to such individual's family), or 80 per centum of such individual's earnings under such program, whichever is lesser and (ii) the State agency will supplement any earnings received by such individual by payments to such individual (which payments shall be considered aid under the plan) to the extent that such payments when added to the individual's earnings from his participation in such special work project will be equal to the amount of the aid that would have been payable by the State agency with respect to such individual's family had he not participated in such special work project, plus 20 per centum of such individual's earnings from such special work project; . . . .

In 1971, when the public service employment program was substituted for the old program of special work projects, Section 602(a)(19)(D) remained intact, but Section 602(a)(19)(E) was deleted from the statute. It was by operation of Section 602(a)(19)(E) that Section 602(a)(19)(D) was limited to prevent welfare recipients from reaping a double benefit. While Section 602(a)(19)(E) is no longer operative, the reasonableness of plaintiffs' argument cannot be evaluated properly without an understanding of the relationship which existed between Section 602(a)(19)(D) and (E).

A hypothetical example of the application of Section 602(a)(19)(E) will illustrate that the one-hundred percent disregard of Section 602(a)(19)(D) never did operate, as plaintiffs would construe it, to entitle recipients to a full AFDC

welfare payment on top of the recipient's special work project income. Assume that Claimant A was employed as a hospital janitor as part of a federally-financed special work project whereby the hospital paid Claimant A $150 per month and was reimbursed the same amount by the Secretary of HEW. Also assume that the state had determined $200 per month to be the standard of need for AFDC welfare payments. In determining whether Claimant A was entitled to AFDC payments, the state was obligated, by virtue of 42 U.S.C. § 602(a)(19)(D), to disregard the entire $150 of special work project income. If no provision other than Section 602(a)(19)(D) were involved, Claimant A would have received a monthly income of $350 ($200 of AFDC payments, as the minimum standard of need, plus $150 of special work project income).

Congress, however, expressly avoided such a double recovery by operation of 42 U.S.C. § 602(a)(19)(E)(i), *supra*, which provided that, with respect to special work project employees, the state must pay to the Secretary of HEW either the entire AFDC welfare payment which the state otherwise would have been obligated to pay to Claimant A (i. e. $200), or eighty percent of Claimant A's earnings as a special work project employee (i. e. $120), whichever was the lesser amount. Claimant A's receipt of the $150 of special work project income was conditioned upon the requirement that the state pay $120 out of Claimant A's $200 AFDC entitlement to the Secretary of HEW in lieu of paying the same amount to Claimant A. Thus, even under the pre-1971 statute, there never was a double recovery by welfare recipients who participated in a Section 632(b)(3) WIN project.

Subsequent to reimbursing the Secretary of HEW, the state was required by Section 602(a)(19)(E)(ii) to supplement Claimant A's special work project income ($150) by an amount which would bring Claimant A's total benefits up to the AFDC standard of need ($200) plus twenty percent of Claimant A's special work project income (i. e. $30). Thus, the supplement received by Claimant A under Section 602(a)(19)(E)(ii) would equal $80 ($50 plus $30) and the total overall monthly income would equal $230 ($150 from special work project earnings and $80 as the state supplement).

Plaintiffs argue that the Section 632(b)(3) WIN projects will not operate as a work incentive to welfare recipients unless AFDC eligibility is maintained by allowing a one-hundred percent disregard as to all income received from participation on a WIN project. In this regard, it should be emphasized that the incentive provided by the old program of special work projects was, in many cases, limited to a supplemental payment (over and above the guaranteed $200 AFDC standard) equal to twenty percent of the special work project income. In the hypothetical, *supra*, the participation of Claimant A in a special work project produced a total welfare benefit of $230 instead of only $200, the additional $30 being equal to twenty percent of Claimant A's special work project income. Clearly, Congress believed that supplemental payments equal to only twenty percent, and not one-hundred percent, of the special work project income would provide a sufficient incentive to encourage welfare recipients to participate in Section 632(b)(3) WIN projects.

From the preceding examination of the nexus between Section 602(a)(19)(D) and Section 602(a)(19)(E), this Court believes that the practice of the Secretary of HEW in disallowing plaintiffs any disregard of public service employment income should not be overturned. The Supreme Court has stated that ". . . administrative practice, consistent and generally unchallenged, will not be overturned except for very cogent reasons if the scope of the command is indefinite and doubtful." Norwegian Nitrogen Prod. Co. v. United States, 288 U.S. 294, 315, 53 S. Ct. 350, 358, 77 L.Ed. 796 (1933). This principle has been expressly applied to

agency rulings of HEW regarding AFDC eligibility. Lewis v. Martin, 397 U.S. 552, 559, 90 S.Ct. 1282, 1286, 25 L. Ed.2d 561 (1970). While the meaning of the provision relied upon by plaintiffs, Section 602(a)(19)(D), may have been clear and definite prior to 1971, the passing of the Talmadge amendments in that year has rendered doubtful the scope of the statutory command embodied in that Section. In 1971, when the program of special works projects was replaced by the public service employment program, Section 602(a)(19)(E) was deleted from the statute. It was Section 602(a)(19)(E) which had established the financial arrangement whereby states would reimburse the federal government for federal expenditures under the WIN program in lieu of making corresponding payments to welfare recipients out of state AFDC funds. By means of such reimbursements, a double recovery for WIN program participants was avoided. Contrary to the argument of plaintiffs, it is clear that Congress never intended the one-hundred percent income disregard of Section 602(a)(19) (D) to operate to give welfare recipients their full special work project income in addition to the $200 AFDC payment.

In the view of this Court, the retention of Section 602(a)(19)(D), without the qualifying presence of Section 602(a)(19)(E), leads to absurd results which can only be explained by legislative oversight. Certainly, the failure to amend Section 602(a)(19)(D) by substituting the phrase "public service employment" for "special work project," as was done consistently throughout the remainder of the statute,[2] is further evidence that Congress overlooked Section 602(a)(19)(D) during the amendment process. As the Supreme Court has stated:

Unquestionably the courts, in interpreting a statute, have some "scope

for adopting a restricted rather than a literal or usual meaning of its words where acceptance of that meaning would lead to absurd results * * * or would thwart the obvious purpose of the statute." Helvering v. Hammel, 311 U.S. 504, 510–511, 61 S.Ct. 368, 371, 85 L.Ed. 303; cf. Commissioner v. Gillette Motor Transport, Inc., 364 U.S. 130, 134, 80 S.Ct. 1497, 1500, 4 L.Ed.2d 1617; and Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 265, 78 S.Ct. 691, 694, 2 L.Ed.2d 743. [C. I. R. v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965).]

For the reasons given above, this Court finds plaintiffs' construction of Section 602(a)(19)(D) to be entirely unreasonable and therefore refuses to adopt the literal application of the words of that Section as requested by plaintiffs.

II.

Turning now to plaintiffs' second claim, this Court is unable to find merit in the argument that Ms. Linkenhoker was denied equal protection of the laws. Plaintiffs contend that if the one-hundred percent income disregard of Section 602(a)(19)(D) is construed to be inapplicable to public service employment participants, then the denial to plaintiffs of the partial ($30 plus one-third) income disregard—which is granted to regularly employed welfare recipients under 42 U.S.C. § 602(a)(8) —denies plaintiffs equal protection under the fifth and fourteenth amendments.

At the outset, it must be noted that plaintiffs' equal protection argument fails to state a claim upon which relief can be granted. The classification which plaintiffs attack, i. e. the difference in income disregard allowances afforded to welfare recipients employed in the regular economy on the one hand,

---

2. Pub.L. 92–223, 85 Stat. 803 (Dec. 28, 1971) amended the Work Incentive Program by striking out the phrase "special work project" and inserting in lieu thereof "public service employment" in each of the following sections: 42 U.S.C. § 632(b)(3); 42 U.S.C. § 633(e)(1); 42 U.S.C. § 633(e)(2)(A); 42 U.S.C. § 633(e)(2)(B); 42 U.S.C. § 633(h).

and to public service employees on the other, derives from a federal statute and not from a state law. 42 U.S.C. § 602(a)(8)(A). Plaintiffs allege that such a classification " . . . violates the equal protection guarantees of the Fifth and Fourteenth Amendments to the United States Constitution."

█ While defendants have not raised the objection, the Court must emphasize that there is only one equal protection guarantee, and it is embodied in the fourteenth amendment as a prohibition against the states, not against the federal government. As the Supreme Court has stated, "[u]nlike the Fourteenth Amendment the Fifth contains no equal protection clause and it provides no guaranty against discriminatory legislation by Congress." Detroit Bank v. United States, 317 U.S. 329, 337, 63 S. Ct. 297, 301, 87 L.Ed.304 (1943). If plaintiffs wish to challenge the discriminatory impact of the income disregard provisions of the federal Social Security Act, a fifth amendment due process claim would have been the proper way to proceed. As the Supreme Court reiterated in Shapiro v. Thompson, 394 U.S. 618, 642, 89 S.Ct. 1322, 1335, 22 L.Ed.2d 600 (1969):

> "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.'" Schneider v. Rusk, 377 U. S. 163, 168, 84 S.Ct. 1187, 1190, 12 L. Ed.2d 218 (1964); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

Nowhere in the complaint do plaintiffs allege that the challenged classification is so egregiously discriminatory as to be violative of due process. Having failed to state a claim upon which relief can be granted, plaintiffs' equal protection argument must be dismissed.

█ It should be noted, however, that this Court would deny plaintiffs' second claim on the merits even if it had been properly brought under the due process clause of the fifth amendment. The fact that welfare recipients employed in the regular economy are allowed, for purposes of determining AFDC eligibility, to disregard the first $30 plus one-third of their remaining monthly income, while public service employees are not allowed to take advantage of the same income disregard, does not constitute an arbitrary or discriminatory classification.

█ It is well-established that a legislative classification will be sustained if it is rationally related to a legitimate governmental interest. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16 (1973); McGinnis v. Royster, 410 U.S. 263, 270, 93 S.Ct. 1055, 1059, 35 L.Ed.2d 282 (1973). The legislative history of the Talmadge amendments indicates that Congress sought to have as many individuals as possible placed in private sector employment; the subsidized public service employment program was intended to be a short-term employment opportunity until such time as the participant could be guided into the regular economy.[3] It is entirely consistent with such a congressional purpose that only those welfare recipients in the regular economy should be afforded a partial income disregard. The purpose of the partial income disregard at 42 U.S.C. § 602(a)(8) is to encourage the transition from public service employment to non-subsidized employment in the private sector by lessening the likelihood that AFDC eligibility will be lost as a result of the higher salaries in the regular economy.

It being evident that the challenged classification is rationally related to a

---

3. In H.R.Rep.No.231, 92d Cong., 1st Sess. 170 (1971), Congress described the public service employment program in the following manner:

> It is not intended that these jobs be used on a long-term, permanent basis to support individual recipients. They should be viewed to the extent possible, considering existing economic conditions, as providing transitional employment that will help prepare individuals for regular, unsubsidized jobs when they are available.

legitimate legislative purpose, this Court finds that plaintiffs have not been denied equal protection of the laws. Certainly, where there is no violation of the equal protection clause of the fourteenth amendment, there can be no " . . . discrimination that is 'so unjustifiable as to be violative of due process' " under the fifth amendment. Shapiro v. Thompson, *supra*, 394 U.S. at 642, 89 S. Ct. at 1335.

### III.

Finally, plaintiffs claim that they are at least entitled to a partial income disregard on the basis of Rule 7.02.09.-06B(7)c(2) of the Maryland Department of Employment and Social Services. Said Rule provides that the first $30 plus one-third of the remainder of earned monthly income is to be disregarded in determining AFDC eligibility. Unlike the federal provision at Section 602(a)(8)(A)(ii) of the statute, no exception is made in the state regulation for public service employees. Plaintiffs ask this Court to enjoin defendant Mason from denying to public service employees the partial income disregard afforded by Rule 7.02.09.06B(7)c(2).

■■ While it may well be true that defendant Mason has ignored the prescription of the state regulation, such action is entirely consistent with the mandate of the federal statute. It is well-established that a state, in order to participate in the federal AFDC program, must maintain a system which complies with the federal Social Security Act. Townsend v. Swank, 404 U.S. 282, 285, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971); King v. Smith, 392 U.S. 309, 316–317, 88 S.Ct. 2128, 2133, 20 L.Ed.2d 1118 (1968). More recently, in Carleson v. Remillard, 406 U.S. 598, 600, 92 S.Ct. 1932, 1934, 32 L.Ed.2d 352 (1972), the Supreme Court declared:

> Section 402(a)(10) of the Social Security Act, 42 U.S.C. § 602(a)(10), places on each State participating in the AFDC program the requirement that "aid to families with dependent children shall be furnished with rea-

sonable promptness to all eligible individuals." *"Eligibility," so defined, must be measured by federal standards.* [Emphasis added.]

While the Maryland Department of Employment and Social Services may well be remiss in not having revised its regulation to comport with the current federal mandate, defendant Mason has acted with complete propriety in measuring the eligibility of plaintiffs for AFDC benefits by the federal standard.

For the reasons stated above, it is this 8th day of January, 1975, ordered:

1. That defendant Weinberger's Motion for Summary Judgement be, and the same hereby is, granted in all respects;

2. That plaintiffs' Motion for Summary Judgment be, and the same hereby is, denied in all respects;

3. That judgment be entered for defendants as to all three counts of the complaint.