Donna J. SPARKS, Plaintiff,

v.

WYETH LABORATORIES, INC., a Foreign Corporation, Parke, Davis & Company, a Foreign Corporation, Merck, Sharpe & Dohme Orthopedics, Inc., a Foreign Corporation, and Merrill National, a Foreign Corporation, Defendants.

No. CIV 77–0173–B.

United States District Court, W. D. Oklahoma.

May 13, 1977.

---

Gene Stipe, John B. Estes and Robert K. McCune of Stipe, Gossett, Stipe & Harper, Oklahoma City, Okl., for plaintiff.

Neil R. Peterson, Asst. Chief, and W. Russell Welsh, Atty., Torts Section, Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

BOHANON, District Judge.

This is a civil action wherein the plaintiff, Donna J. Sparks, prays judgment against

the defendant manufacturers jointly and severally for $6,675,210.00; and the intervenor defendant, United States of America, has filed certain motions which come on for hearing.

This case comes on before the court on two motions:

1. The United States has moved to substitute itself as sole party defendant in the place of the four defendants named by plaintiff (Wyeth Laboratories, Inc.; Merrill-National; Parke, Davis and Company; and Merck, Sharpe and Dohme Orthopedics, Inc. [hereinafter called "vaccine manufacturers"]). These four defendants are the sole manufacturers of so-called swine flu vaccine (Dr. David W. Berry Affidavit) under the National Swine Flu Immunization Program of 1976 (Public Law 94–380; 42 U.S.C. § 247b(j)–(l) [hereinafter referred to as "Swine Flu Act"]). The motion to substitute is made pursuant to 42 U.S.C. 247b(k)(5)(A).

2. Assuming that the substitution is accomplished, the United States has moved to dismiss the action against it because of the failure of the plaintiffs to file an administrative claim as required by 28 U.S.C. § 2675(a), a part of the Federal Tort Claims Act [hereinafter referred to as "Tort Act"].

Plaintiff opposes these dual motions on three grounds: 1) that the Swine Flu Act is unconstitutional because it violates the due process and equal protection clauses and the Seventh and Tenth Amendments; 2) that an injured party may still sue a vaccine manufacturer directly for negligence notwithstanding the provisions of the Swine Flu Act; and 3) that the claim procedures of the Tort Act may not be invoked in a suit against a manufacturer who is not an employee of the United States. Because this will be the seminal decision dealing with the Swine Flu Act, the Court deems it appropriate to express its reasoning on each of these issues in some detail.

It is noted that plaintiff had moved for an injunction and the empaneling of a three judge court to determine the constitutionality of the Swine Flu Act. That motion was withdrawn by counsel for plaintiff at oral argument, since, as the United States had pointed out in its opposition, the statute on which it was based (28 U.S.C. § 2282) had been repealed by Public Law 94–381.

Plaintiff allegedly received a swine flu immunization on November 24, 1976 at the office of a private physician and within six hours experienced a condition which has left her with "some paralysis in her body and loss of vision and ability to speak" (Complaint, paragraphs 7, 8, 9). The Court accepts this statement as true, without, of course, deciding whether there is any medical or legal causation between the inoculation and the purported condition, and, if so, whether the condition is compensable.

The Swine Flu Act became law on August 12, 1976 and was to apply in the instance of all swine flu inoculations given after September 30, 1976 (42 U.S.C. § 247b(k)(2)(A)). Its provisions are simple. It applies to three categories of "program participants" as defined in 42 U.S.C. § 247b(k)(2)(B):

1. Manufacturers or distributors of vaccine who make no profit on the vaccine;

2. Public or private agencies or organizations that provide an inoculation with informed consent and without charge to the recipient for the vaccine or its administration; and,

3. Medical or other health personnel who provided or assisted in providing an inoculation with informed consent and without charge to the recipient for the vaccine or its administration.

We are here concerned with only the first or manufacturers category, although what is said as to it would apply with equal validity to the other categories.

The Swine Flu Act does three basic and relevant things:

1. It creates a cause of action against the United States for any personal injury or wrongful death sustained as a result of a swine flu inoculation (42 U.S.C. § 247b(k)(2)(A)).

2. Making that cause the exclusive remedy (42 U.S.C. § 247b(k)(3)), it abolishes the

cause of action against the manufacturer-program participant.

3. It makes the procedures of the Tort Act applicable to the suits against the United States (42 U.S.C. § 247b(k)(2)(A)). However, the Swine Flu Act does not limit a plaintiff's theory of recovery to negligence alone as under the Tort Act (28 U.S.C. 1346(b), 2674), but rather specifies that the United States shall be liable upon any theory available against a program participant under the law of the place where the act or omission occurred, "including negligence, strict liability in tort, and breach of warranty" (42 U.S.C. 247b(k)(2)(A)(i)).

The Swine Flu Act does contain other provisions which are set forth only insofar as necessary to the discussion which follows.

The Swine Flu Act was generated and enacted by Congress in good faith haste. This is apparent both from the fact that the bill was not even referred formally to the House Judiciary Committee and the fact that no formal report of either chamber of Congress exists. In fact, such a report is contained only in the remarks of Representative Paul Rogers (Fla.) in the Congressional Record of August 26, 1976 which supplement his remarks during the August 10, 1976 debate on the bill. Congressman Rogers is Chairman of the House Subcommittee on Interstate and Foreign Commerce, the committee which drafted the bill and held applicable hearings. His remarks contain an exposition of the legislative history of the Swine Flu Act, its rationale, the alternatives considered and rejected by Congress, and a section-by-section analysis of the bill. They are set forth at pp. E 4695–4707 of the Congressional Record of August 12, 1976. Debate occurred in both chambers on August 10, 1976, that of the House appearing at Cong.Rec., H 8643–8655 and that of the Senate appearing at Cong.Rec., S 14108–14122.

It is sufficient to say that the bill was occasioned by the collapse of the commercial liability insurance market, both for the manufacturers and other program participants (Cong.Rec., *Liability,* E 4698–4699). Since the bill was generated by the House Interstate and Foreign Commerce Committee with some amendments by the Senate, it is natural that the legislative history would evidence such connection with the commerce clause as was apparent. This was found in two areas. First, the economic cost of the last flu epidemic in the United States, the Hong Kong flu of 1968–69, was $3,900,000,000 with 33,000 excess deaths (Cong.Rec., E 4696), much of the economic loss being due to lost wages. As a corollary, flu was noted to be the one disease with the capacity to close plants (*Ibid.*). Second, the vaccine would not be available for distribution in interstate commerce unless the insurance-liability problem was solved.

The need for haste arose from the need to inoculate the population before the flu season began (Cong.Rec., E 4701, S 14110).

The collapse of the insurance market was occasioned by two factors:

1. The miniscule claims experience of insurers with prior flu vaccines was not a problem (Cong.Rec., E 4699). However, the significant problem was the potential for a large number of claims with the attendant costs of investigation and defense. Insurance company witnesses estimated that this cost alone could run into the billions of dollars (Cong.Rec., H 8648–9). Such claims were called frivolous or non-meritorious.

2. The recent cases of *Davis v. Wyeth Laboratories, Inc.,* 399 F.2d 121 (9th Cir., 1968) and *Reyes v. Wyeth Laboratories,* 498 F.2d 1264 (5th Cir., 1974) had held a manufacturer of polio vaccine liable on a non-negligence, strict liability in tort theory for failure to warn a vaccinee of the risks attendant upon the vaccine. Thus, while the manufacturers could insure themselves against negligence, they could not afford insurance premiums for the cost of defense of frivolous, non-meritorious claims or for attenuated theories of non-negligent liability (Cong.Rec., E 4698–9, 4700). Since the manufacturers could insure themselves for negligence liability, the manufacturers would thus be liable in a suit over by the United States on a negligence theory (42 U.S.C. § 247b(k)(7)) if it has settled any

claim or has been found liable on any theory and can make out a case of negligence against a manufacturer (Cong.Rec., E 4705).

It is apparent that both the text of the Swine Flu Act and the legislative history show that the statute passes any test of its constitutionality. But, the Court will deal with each of the plaintiff's contentions in order.

 1. There is no question but that the Swine Flu Act comports with the due process clause of the Fifth Amendment. It is manifest that the statute, insofar as it abolishes a cause of action against a program participant, does so only prospectively. It does not suffer the infirmity of the cases cited by plaintiff in which abolitions of vested rights were found to be a due process violation. This is the teaching of *Keller v. Dravo Corporation,* 441 F.2d 1239 (5th Cir., 1971). As has been stated by the Supreme Court:

A person has no property, no vested interest, in any rule of the common law. [*Mondou v. New York, New Haven & Hartford Railroad Co.,* 223 U.S. 1, 50, 32 S.Ct. 169, 175, 56 L.Ed. 327 (1912)].

And again:

No person has a vested interest in any rule of law entitling him to insist that it shall remain unchanged for his benefit. . . . [*New York Central R. R. Co. v. White,* 243 U.S. 188, 198, 37 S.Ct. 247, 250, 61 L.Ed. 667 (1917)].

Moreover, while the prospective direct remedy of an injured person against a manufacturer has been abolished, an alternative, efficacious remedy against the United States is substituted. Such a replacement or substitution of remedies, while perhaps not technically necessary for due process, is nonetheless even more indicative of the satisfaction of due process requirements:

The abolition of non-vested rights is especially innocuous if, as here, one remedy is substituted for another. [*Keller v. Dravo Corporation, supra,* 441 F.2d at 1242].

The simple fact is that—

No one has a vested right in a given mode of procedure and so long as a substantial and efficient remedy is provided, due process of law is not denied by a change in remedy. [*Swanson v. Bates,* 170 F.2d 648, 650–1 (10th Cir., 1948), citing *Crane v. Hahlo,* 258 U.S. 142, 147, 42 S.Ct. 214, 66 L.Ed. 514 (1922)].

This is precisely what the Congress has done with the Swine Flu Act. Nor does the fact that the alternative remedy against the United States here involves an administrative aspect render it constitutionally defective. This point was decided principally in *N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937), and inferentially in workmen's compensation decisions, since most such statutes entail administrative proceedings and remedies.

Not only does general constitutional law support what the Congress has done here, but the Court concurs that several of the examples cited by the United States of the abolition of prospective rights with or without substitution of another remedy are ample authority. The foremost example is that of several statutes which have amended the Tort Act to abolish a remedy against certain government employees and leave the injured person solely to his suit against the United States. See: 28 U.S.C. § 2679(b) (the Federal Drivers Act); 38 U.S.C. § 4116 (Veterans Administration medical personnel); 42 U.S.C. § 233 (Public Health Service medical personnel); 22 U.S.C. § 817(a) (State Department medical personnel); 10 U.S.C. § 1089(a) (Armed Forces medical personnel). The Swine Flu Act is modeled precisely on these previous statutes, which have always been found to be constitutional when challenged (Cong. Rec., *The Tort Claims Approach,* E 4700–4701). Moreover, none of these statutes, dating back to 1961, substituted any alternative remedy since, in each case, the injured party was already entitled to sue the United States under the Tort Act. The contention that the abolition of one remedy by the Federal Drivers Act without the substitution of another violated due process was specifically rejected in *Carr v. United States,* 422 F.2d 1007, 1010 (4th Cir., 1970). Accord: *Thomason v. Sanchez,* 398 F.Supp.

500 (D.N.J.,1975), aff'd, 539 F.2d 955 (3rd Cir., 1976), cert. den., 429 U.S. 1072, 97 S.Ct. 809, 50 L.Ed.2d 790 (1977); *Nistendirk v. McGee,* 225 F.Supp. 881 (W.D.Mo., 1963).

Other examples include those statutes which substitute a remedy against the United States for a remedy an injured person formerly had against a government contractor. Thus, the Suits in Admiralty Act (46 U.S.C. § 745) and its predecessor constitutionally immunized private operators of government vessels. See: *Brady v. Roosevelt Steamship Co.,* 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471 (1943). The Defense Bases Act (42 U.S.C. § 1651(c)) makes the exclusive remedy of an employee of a covered government contractor against that contractor a compensation remedy under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C. § 905). The latter Act was found constitutional in the face of a due process challenge in *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932). Remember 28 U.S.C. § 1498(a) constitutionally makes an action in the Court of Claims the exclusive remedy for any patent owner whose patent is infringed after the date of the statute by the actions of a government contractor. *Richmond Screw Anchor Co. v. United States,* 275 U.S. 331, 48 S.Ct. 194, 72 L.Ed. 303 (1928). The importance of these statutes and cases lies in the fact that they immunize and abolish rights against government contractors as opposed to government employees. Thus, what Congress has done as to the government contractor-manufacturers under the Swine Flu Act is just another example of permissible legislation in areas "necessary and proper" to the fulfillment of federal constitutional responsibilities for the public welfare.

Without citation, other examples of the abolition of remedies consistent with due process include state workmen's compensation statutes, no-fault automobile insurance laws, the so-called "heart balm" statutes, and charitable immunity statutes.

■ The additional arguments made by plaintiff that the Swine Flu Act would contravene Rules 17 and 19 of the Federal Rules of Civil Procedure are simply not of sufficient magnitude to pose any constitutional infraction. If it were necessary to decide these contentions, the Court could as well note that the legislative history and the statute support the proposition that the United States is the real party in interest (Cong.Rec., E 4701; 42 U.S.C. § 247b(k)(1) (A)(ii)), that the non-joinder provisions were necessary to achieve the legislative intent and therefore that the substantive provisions of the Swine Flu Act control over the procedural devices of the Federal Rules and that there will not be any infringement of plaintiff's discovery rights since the manufacturers are obligated to cooperate with the United States relative to discovery and the plaintiff can move to decertify them if they impede discovery (42 U.S.C. § 247b (k)(6); Cong.Rec., E 4705).

■ 2. There is no equal protection violation. The plain fact is that only the Fourteenth Amendment, which is not applicable to the federal government (*Draper v. Phelps,* 351 F.Supp. 677, 681 (W.D.Okl., 1972)) contains an equal protection clause. To be applied against the federal government, the equal protection clause must be incorporated as the equivalent of a due process violation under the Fifth Amendment. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Thus, while a person attacking the constitutionality of a statute has the burden of proof and a heavy one (*Crowell v. Benson, supra,* 285 U.S. 22, 52 S.Ct. 285), plaintiff here has a double burden. She must prove that not only is the classification in which she has been placed discriminatory, but that it is so arbitrary and injurious as to constitute a denial of due process.

■ Since the Federal Drivers Act was the seminal model for this statute, the language of *Carr v. United States, supra,* 422 F.2d at 1011–1012, in upholding the Federal Drivers Act against an equal protection challenge, is applicable and persuasive here:

Carr next contends that the Drivers Act violates the fifth amendment's due process clause by denying him equal pro-

tection. *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). The deprivation, he argues, results from the fact that abrogation is restricted to accidents which involve motor vehicles. Government employees can sue their co-workers for injuries sustained in any other job-related activity.

The classification which the Drivers Act creates does not penalize the exercise of any constitutional right. As we have held, the right to sue a coworker does not enjoy constitutional protection. Therefore, the classification need not be justified by 'a *compelling* governmental interest.' *Shapiro v. Thompson,* 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (emphasis in the original). Nor does the Act create a 'suspect' classification, see, e.g., *Korematsu v. United States,* 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944), or involve a 'fundamental' interest. See e.g., *Reynolds v. Sims,* 377 U.S. 533, 561–562, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Thus, a rigorous standard of review would be inappropriate here. Rather, the statutory classification comes here clothed with a presumption of constitutionality and it 'will not be set aside if any state of facts reasonably may be conceived to justify it.' *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

The legislative history to which we have already referred makes it clear that Congress was moved by the fact that automobile accident insurance placed such a heavy financial burden on government drivers that it was adversely affecting morale and making it difficult for the government to attract competent drivers into its employ. S.Rep.No.736, 87th Cong., 1st Sess. (1961), reprinted in 2 U.S. Code Cong. & Admin.News 1961, at p. 2784 (1962). We think that the magnitude of the automobile insurance problem justified Congress's separate treatment of this specific problem.

Thus, *Carr* disregards *Bolling* as must be done here. Similarly, there is no constitutional right to sue a drug manufacturer here as there was no right to sue a co-employee in *Carr.* Therefore, such routine equal protection considerations as "compelling governmental interest" or "suspect" classifications or "fundamental" interests are simply not involved here.

The Court cannot create any meaningful distinction between the Swine Flu Act and those classifications upheld against equal protection charges in the following representative list of cases: *Parsons v. U. S. Postal Service,* 380 F.Supp. 815 (D.N.J., 1974) [postal regulations prohibiting door-to-door delivery to detached homes]· *Detroit Bank v. United States,* 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304 (1943) [federal estate tax liens given statutory priority over mortgages]; *Linkenhoker v. Weinberger,* 387 F.Supp. 449 (D.Md., 1975) [welfare recipient income exclusions which discriminated in favor of public employees]; *Hess v. Mullaney,* 213 F.2d 635 (9th Cir., 1954) [tax bill discriminating between mining claims and other types of property]; *Employing Lithographers of Greater Miami v. N.L.R.B.,* 301 F.2d 20 (5th Cir., 1962) [allegedly discriminatory industry exemptions from the National Labor Relations Act].

■ 3. The Swine Flu Act in no manner unconstitutionally constricts plaintiff's right to a jury trial in violation of the Seventh Amendment. We must begin with the proposition set out above that due process does not categorically prevent the abrogation of causes of action. The fact is that the alternative remedy, the Tort Act, proscribes jury trials. 28 U.S.C. § 2402. This, claims plaintiff, violates the Seventh Amendment.

■ However, as a matter of logic, it is axiomatic that if a cause of action can be abolished, the jury trial of that action is also abolished. The elemental fact is that suits against the sovereign were unknown at common law. Thus, perforce, there was no right of trial by jury against the sovereign at common law. Hence, a jury trial need not be accorded where a sovereign waives its immunity, and the Seventh Amendment guarantee is inapplicable. This is the direct holding of the Supreme

Court in the cases of *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed. 1058 (1941) and *Glidden Company v. Zdanok,* 370 U.S. 530, 82 S.Ct. 1459, 8 L.Ed.2d 671 (1962), reh. den., 371 U.S. 854, 83 S.Ct. 14, 9 L.Ed.2d 93, and is the factor which distinguishes the Swine Flu Act from the cases cited by plaintiff where the sovereign was not involved.

█ Arguments similar to those made by the plaintiff were rejected under the Federal Drivers Act on the authority of the above rationale. Since the Federal Drivers Act is the prototype of the Swine Flu Act, the Court finds persuasive and controlling the opinions in *Nistendirk v. McGee, supra,* 225 F.Supp. 881; *Gustafson v. Peck,* 216 F.Supp. 370 (N.D.Iowa, 1963), and *Adams v. Jackel,* 220 F.Supp. 764 (E.D.N.Y., 1963).

The Court also notes in passing that the Seventh Amendment has never been held to be such a fundamental right that it was incorporated against the states under the Fourteenth Amendment. *Hardware Dealers Mut. Fire Ins. Co. of Wisconsin v. Glidden Co.,* 284 U.S. 151, 52 S.Ct. 69, 76 L.Ed. 214 (1931); *Iacaponi v. New Amsterdam Casualty Co.,* 258 F.Supp. 880 (W.D.Pa., 1966), aff'd, 379 F.2d 311 (3rd Cir., 1967), cert. den., 389 U.S. 1054, 88 S.Ct. 802, 19 L.Ed.2d 849. The Oklahoma Supreme Court has held that a state may abolish a right of jury trial. *Anderson v. Corporate Commission,* 327 P.2d 699, 703 (Okl.,1957). In fact, the Oklahoma State Constitution partially abrogates the common law jury trial right in two respects: trial by six rather than twelve jurors, and verdict by three-fourths of the jury in civil actions (Okla.Const., Art. 2, § 19). Thus, there could not even be an equal protection argument fashioned out of the denial of a jury trial here as plaintiff tries to do.

█ 4. There is no Tenth Amendment violation. Plaintiff relies mainly upon cases declaring early pieces of New Deal legislation to be unconstitutional. However, the spirit if not the letter of those cases has been overruled in subsequent decisions. Thus, in a case practically dispositive of this one, the Supreme Court, in *Helvering v. Davis,* 301 U.S. 619, 57 S.Ct. 904, 81 L.Ed. 1307 (1937), held as follows:

Congress may spend money in aid of the "general welfare." Constitution, Art. I, section 8; *United States v. Butler,* 297 U.S. 1, 65, [56 S.Ct. 312, 319, 80 L.Ed. 477]; *Steward Machine Co. v. Davis, supra.* There have been great statesmen in our history who have stood for other views. We will not resurrect the contest. It is now settled by decision. *United States v. Butler, supra.*

\* \* \* \* \* \*

Nor is the concept of the general welfare static. ·Needs that were narrow and parochial a century ago may be interwoven in our day with the well-being of the Nation. What is critical and urgent changes with the times.

\* \* \* \* \* \*

The problem is plainly national in area and dimensions. Moreover, laws of the separate states cannot deal with it effectively. Congress, at least, had a basis for that belief.

\* \* \* \* \* \*

When money is spent to promote the general welfare, the concept of welfare or the opposite is shaped by Congress, not the states. So the concept be not arbitrary, the locality must yield. Constitution, Art. VI, Par. 2. [301 U.S. at 640, 641, 644, 645, 57 S.Ct. at 908, 908–909, 909–910, 910].

Both *Helvering* and *Steward Machine Co. v. Davis,* 301 U.S. 548, 57 S.Ct. 883, 81 L.Ed. 1279 (1937) upheld portions of the Social Security Act against Tenth Amendment challenges. *Steward* held that Social Security was an area in which the states and the federal government could work together and that the legislation imposed no coercion on the states.

Such is plainly true of the Swine Flu Act, which amends the Public Health Service Act. The latter Act authorizes the Secretary of Health, Education and Welfaré to make grants to the states and to assist states and their political subdivisions "to

assist in meeting the costs of communicable and other disease control programs" (42 U.S.C. § 247b(a)). This directive is in fulfillment of the general directive to the Secretary to "assist States and their political subdivisions in the prevention and suppression of communicable diseases" (42 U.S.C. § 243(a)).

The Swine Flu Act calls for the participation of state and local health departments (42 U.S.C. 247b(j)(1)(c); Cong.Rec., E 4698). Moreover, Oklahoma law sanctions this very cooperation. It basically provides that the State Commissioner of Health, the Chief Administrative Officer of the State Board of Health, shall have authority to enter into agreements with the Federal Government on matters pertaining to public health (63 Okla.St. 1–106(b)(12)). These agreements may be for money, personnel, or property to promote the control of disease. The State Treasurer acts as the custodian of federal funds received to promote public health (63 Okla.St. 1–108). In addition, County Boards of Health are authorized to cooperate with the State Board of Health in matters of disease prevention and control (63 Okla.St. 1–201—1–218).

Not only does the State of Oklahoma authorize participation in such programs, but, as in *Steward Machine Co. v. Davis, supra,* 301 U.S. 548, 57 S.Ct. 883, there is no coercion on the state. Nor is there coercion upon any individual to be inoculated in view of the consent requirements expressed in 42 U.S.C. § 247b(j)(1)(F) (Cong.Rec., S 14118). Thus, contrary to plaintiff's assertion, state and individual participation are not forbidden, but mandated. How such a statute interferes with state sovereignty is something plaintiff has failed to explain. Certainly, it contains no ingredients of a Tenth Amendment violation.

■ 5. The Swine Flu Act is applicable to all causes of action, including those sounding in negligence. Plaintiff has claimed that, since the statute says it was necessary to protect program participants from "other than their own negligence" (42 U.S.C. § 247b(k)(1)(A)(i)), and since she is suing for negligence, this suit will lie. The

Court simply cannot agree with this interpretation of the statute. 42 U.S.C. § 247b(k)(2)(A)(i), an operative provision, says that the liability of the United States may be on any theory "including negligence", that this liability is exclusive (42 U.S.C. § 247b(k)(3)), and that only the United States may sue over against a negligent program participant (42 U.S.C. § 247b(k)(7)). This scheme effectuates the Congressional design to leave the program participants at risk for negligence only, since negligence was a risk which they could insure. Since the manufacturers could not protect themselves against the cost of defending meritless suits, it was necessary for Congress to both eliminate direct actions against them (many of which could be meritless) and obviate their joinder in what could otherwise be meritless suits.

■ 6. Plaintiff claims that the Swine Flu Act cannot be applied to manufacturers as government contractors since only employees are covered by 28 U.S.C. § 2671 of the Tort Act. This contention is in error because it wrongly assumes that the Congress amended the Tort Act (which, it should be noted, Congress could have done validly). In any event, the Swine Flu Act has its own definitional sections (42 U.S.C. § 247b(k)(2)(B), and (1)) and merely incorporates the *procedures* of the Tort Act (42 U.S.C. § 247b(k)(1)(B)). The Swine Flu Act applies to manufacturers.

■ Having determined the constitutionality and applicability of the Swine Flu Act, there remains only the relatively simple task of determining the motions of the United States before the Court. The United States is to be substituted in the place of the four manufacturers (42 U.S.C. § 247b(k)(5)(A)). The requisite certification of the program participant status of the manufacturers is attached to the United States' Motion to Substitute and it is conclusive upon this Court (Cong.Rec., E 4704) for purposes of this motion.

■ One of the procedures specified by the Tort Act is the filing of an administrative claim (28 U.S.C. § 2675(a)). This the

plaintiff has not done (Affidavit of Neil R. Peterson, paragraph 4). Since the filing of this claim is jurisdictional (*Molinar v. United States,* 515 F.2d 246 (5th Cir., 1975); *Best Bearings Co. v. United States,* 463 F.2d 1177 (7th Cir., 1972); *Bialowas v. United States,* 443 F.2d 1047 (3rd Cir., 1971); *Meeker v. United States,* 435 F.2d 1219 (8th Cir., 1970); *Ferreira v. United States,* 389 F.2d 191 (9th Cir., 1968); *Walley v. United States,* 366 F.Supp. 268 (E.D.Pa., 1973)), this action should be dismissed. Accordingly, a judgment of dismissal without prejudice accompanies this Memorandum Opinion.