**UNITED STATES of America, Appellant,**

v.

**Warren B. DAVIS, Trustee of the Warren B. Davis Revocable Living Trust, and Westwood Industrial Park, Ltd., Appellees.**

No. 94–2693.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 16, 1995.

Decided April 21, 1995.

Rehearing Denied June 15, 1995.

Murray S. Horwitz, Washington, DC, argued, for appellant.

Lynn C. Rodgers, Springfield, MO, argued, for appellees.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

This appeal requires us to visit a narrow question: whether the 10–year period set forth in the estate tax lien statute, 26 U.S.C. § 6324(a)(1), is durational or limitational. If the period is durational, the government has ten years to enforce the lien before it expires. If the period is limitational, the government has ten years to file its complaint. After reviewing the statute and the cases that have considered the issue before us, we conclude that the ten-year period is durational and dismiss the appeal as moot.

I.

The government commenced this suit on September 27, 1993, to foreclose the special tax lien which arose automatically upon the death of Edward F. McDaris on June 30, 1984. See 26 U.S.C. § 6324(a)(1). On May 9, 1994, the district court[1] granted appellees' motion for summary judgment, denied the government's motion for summary judgment, and ordered the government not to levy execution pursuant to the divested lien. The district court decided that the properties in question were divested of the government's lien under 26 U.S.C. § 6324, and held that appellees took their respective tracts of land

1. The Honorable Russell G. Clark, Senior District Court Judge for the Western District of Missouri.

free and clear of any estate tax lien asserted by the government. For reasons that will shortly become evident, we express no view on the merits of the district court's order.

The date of June 30, 1994 marked ten years since Edward F. McDaris died. On July 6, 1994, the government filed its notice of appeal. Appellees maintain that the appeal is now moot because the lien has expired.

## II.

■ The pertinent statute provides, in relevant part, that "[u]nless the estate tax imposed ... is sooner paid in full ... it shall be a lien upon the gross estate of the decedent for 10 years from the date of death...." 26 U.S.C. § 6324(a)(1). The lien thus arises in the government's favor immediately upon the decedent's death and attaches to all the property included in the gross estate without prior notice or filing. *See United States v. Blakeman*, 997 F.2d 1084, 1088 (5th Cir. 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 687, 126 L.Ed.2d 654 (1994).

■ Several courts have concluded, based upon their reading of the plain language of the statute, that the ten-year period is durational. *See, e.g., United States v. Potemken,* 841 F.2d 97 (4th Cir.1988); *United States v. Cleavenger,* 517 F.2d 230 (7th Cir.1975). Others have expressed disbelief that the government would impose a durational deadline upon itself, finding instead that the time period described in the statute is limitational. *See, e.g., United States v. Saleh,* 514 F.Supp. 8 (D.N.J.1980); *cf. Chevron, U.S.A., Inc. v. United States,* 705 F.2d 1487 (9th Cir.1983) (reversing the district court's finding that the government had allowed the durational period to lapse under § 6324, and noting in dictum that government's notice of levy was sufficient to toll running of ten-year period); *see also Cleavenger,* 517 F.2d at 235–36 (Tone, J., dissenting).

The statute mandates that there "shall be a lien upon the gross estate of the decedent for 10 years from the date of death...." 26 U.S.C. § 6324(a)(1). The statute does not say that the government has ten years to file its claim, only that the lien lasts for ten years. As the *Cleavenger* and *Potemken* courts concluded before us, the plain language of the statute defines the lien as durational. The "ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provisions." *Cleavenger,* 517 F.2d at 234 (quoting *Minor v. Mechanics Bank of Alexandria,* 26 U.S. (1 Peters) 46, 64, 7 L.Ed. 47 (1828)). Durational liens, moreover, are not uncommonly encountered in the law. *See Cleavenger,* 517 F.2d at 234–35 (comparing the § 6324 lien to judgment liens); *Berg v. Torgerson,* 100 N.W.2d 153, 155–56 (N.D.1959) (levy and sale of property must take place within durational period before judgment lien expired). We note, too, that there are benefits that accrue from a durational scheme. For one thing, the passage of ten years from a decedent's death provides a bright line for presuming that there will be no title trouble ten years after the decedent's death due to a tax lien. Conversely, "[w]henever a title examiner comes upon an indication of ownership within an immediately prior ten year period by a decedent, ... he has a red flag of possible title trouble." *Cleavenger,* 517 F.2d at 234. Because the lien arises automatically and secretly, section 6324(a)(1) "is an extreme measure that, without the ten-year durational limit, would provide future property holders 'no assurance whatsoever from the passage of time.'" *Potemken,* 841 F.2d at 101 (quoting *Cleavenger,* 517 F.2d at 234).

The government argues that a durational scheme rewards delay, and creates an incentive for the defendant to slow the resolution of the case. That may be so, but few defendants do otherwise. Other means, however, are available to check and deter this tendency. All parties in the district court have the responsibility to expedite litigation and they face penalties for failing to do so. *See, e.g., 28 U.S.C. § 1927* (imposing liability for vexatious litigation); Fed.R.Civ.P. 1 (securing the "just, speedy, and inexpensive determination of every action"); Fed.R.Civ.P. 11 (providing sanctions for filing papers which harass or cause unnecessary delay or needless increase in the cost of litigation); Fed.R.Civ.P. 37 (providing sanctions for failure to cooperate in discovery). Besides, a durational regime

creates substantial incentives for the plaintiff to move the case to a prompt conclusion. The plaintiff determines when the complaint is filed, when it needs discovery, and when summary judgment for it is appropriate.

The government asserts as well that a durational scheme will encourage frivolous appeals. But the taxpayer must consider whether it is willing to bear the sanctions and the costs of a frivolous appeal. *See, e.g.,* FRAP 38. In addition, while the government urges that the taxpayer will have no incentive to settle if delay might help its cause, the taxpayer does in fact have such an incentive. "Unless [the transferee of the decedent's property] is willing to sit for ten years and hope that the Government does not proceed with assessment lien procedures, he will have a powerful incentive to see that the lien is eliminated. The annual accrual of interest on the unpaid tax obviously would not lessen the incentive." *Cleavenger,* 517 F.2d at 234.

Arguments about delay, moreover, lie ill in the government's mouth in the present circumstances, since their limitational reading has led this lawsuit to become more protracted than it would have been under a durational reading. The government in our case waited nine years after decedent's death before filing its complaint, and the dispute over the lien is still alive over ten years after the lien arose. As *Cleavenger* presciently noted:

> Suit could be filed for foreclosure within the ninth year after the decedent's death and if the proceedings took the normal leisurely course which tax litigation reaching this court seems sometimes to have as an attribute, the foreclosure, and the life of the now latent lien, could be extended well into the next decade. We have been furnished no persuasive reason for determining that the Government does not have available more than adequately effective means of estate tax collection by utilization of assessment lien procedures buttressed by the freezing act of the special tax lien, assuming, of course, that the business of collecting the tax is followed within any type of vigor whatsoever.

517 F.2d at 234. A limitational reading would permit the government to wait until the last day of the tenth year before filing its claim, and continue to litigate the matter for years after that. The statute in no way suggests that this is what Congress intended.

We conclude that the statute places a reasonable burden on the government to prosecute its claim diligently before it expires, and thus that the construction that we propose for the statute is not unreasonable. The government has elsewhere conceded that it is a rare case in which foreclosure upon a section 6324 lien cannot be completed within ten years. *Potemken,* 841 F.2d at 101.

### III.

The government argues that it served a notice of levy on the property before the expiration of the ten-year period, and that "such service was sufficient to satisfy whatever limitations statute on collection applied, whether or not the lien underlying the levy was thereafter allowed to lapse." Reply Br. at 12. Despite recognizing this issue in its FRAP 10(b)(3) Statement of Issues, *see* Appeal Information Form dated July 15, 1994, Appellees' App. at 36, the government failed to develop this issue in its opening brief. Instead, it raised the issue for the first time in its reply brief. Issues not argued in the opening brief cannot be raised in the reply brief. *See, e.g., Falco Lime, Inc. v. Tide Towing Co.,* 29 F.3d 362, 367 n. 6 (8th Cir. 1994); *French v. Beard,* 993 F.2d 160, 161 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 706, 126 L.Ed.2d 672 (1994).

### IV.

For the foregoing reasons, the appeal is dismissed as moot.