NE Acceptance Corp. v. USA          CV-93-390-JD  09/17/97  P

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


New England Acceptance Corp.

     v.                              Civil No. 93-390-JD

United States of America, et al.


                          O R D E R


     The plaintiffs initially brought this action against several

defendants seeking to quiet title to a tract of land in Alton,

New Hampshire.  Before the court is the motion of plaintiff New

England Acceptance Corporation ("NEAC") for summary judgment

against the defendant, the United States of America (the

"government"), on issues of lien priority (document no. 148).[1]


                         Background[2]

     On August 14, 1986, Elizabeth Boyer conveyed by gift a tract

of land in Alton, New Hampshire (the "property"), to Campfire

Point Associates ("CPA"), a partnership comprised of her

children, Tom, William, and Paula.  On August 24, 1986, she died.

---

   [1]The other parties to the action have resolved their dispute.

   [2]The facts relevant to the instant motion are not in dispute or
have previously been determined by the court.  The factual and
procedural background of the case is more fully described in the
court's June 3, 1996, order, and the court recounts here only
those facts pertinent to the remaining dispute.

The gift tax associated with the transfer has not been paid. Subsequent to the conveyance to CPA, NEAC acquired a mortgage interest upon a portion of the property. The mortgage was recorded on December 5, 1988.

The court conducted a bench trial on the first of two phases of this case from April 29, 1996, to May 2, 1996. On June 3, 1996, it issued an order resolving several of the disputed factual issues in the case. It ruled, inter alia, that: Elizabeth Boyer's gift to CPA was valid but voidable because Boyer lacked the requisite donative capacity at the time that she signed the deed; CPA was a partnership capable of receiving the gift; the Boyer children were estopped from contesting the validity of the gift to CPA because of their subsequent conduct; and, like the children, the government was bound by the court's determination that the property passed as a gift rather than through Boyer's estate.

After the court's ruling, the government took several steps in an attempt to preserve its interest in the property. On July 11, 1996, it recorded a notice of a federal tax lien for gift tax owed on the property. On August 14, 1996, it served upon NEAC a notice of seizure of the property, a notice of encumbrances, and a levy for gift tax. The government did not, however, take physical possession of the property.

2

Because of the statutory framework discussed more fully infra, three distinct claims against the property are at issue here. First, Boyer's gift to CPA created a special gift tax lien in favor of the government that arose automatically at the time of the conveyance. Because the gift tax was never paid, the government also has a general gift tax lien against the property. Finally, NEAC has its mortgage interest in the property. The parties dispute the current status and priority of these interests. On December 10, 1996, the plaintiff filed a motion for summary judgment on the lien priority issues.

## Discussion

The role of summary judgment is "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Snow v. Harnischfeger Corp., 12 F.3d 1154, 1157 (1st Cir. 1993) (quoting Wynne v. Tufts Univ. Sch. of Medicine, 976 F.2d 791, 794 (1st Cir. 1992)). The court may only grant a motion for summary judgment where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking

3

summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Quintero de Quintero v. Aponte-Roque, 974 F.2d 226, 227-28 (1st Cir. 1992). The court must view the entire record in the light most favorable to the non-moving party, "'indulging all reasonable inferences in that party's favor.'" Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). However, once the moving party has submitted a properly supported motion for summary judgment, the non-moving party "may not rest upon mere allegation or denials of its pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (citing Fed. R. Civ. P. 56(e)).

The instant motion requires the court to resolve the following issues: (1) whether the government's special gift tax lien was durational or limitational; (2) if the gift tax lien was durational, whether the government's levy and notice of seizure was sufficient to enforce the lien prior to its expiration; and (3) if the government's special gift tax lien expired prior to enforcement, whether the government's general tax lien is

4

entitled to higher priority than NEAC's mortgage.[3]  The court

discusses these issues <u>seriatim</u>.


I.   <u>Term of Special Gift Tax Lien</u>

26 U.S.C. § 6324(b) provides, in relevant part, that

> unless the gift tax imposed . . . is sooner paid in
> full or becomes unenforceable by reason of lapse of
> time, such tax shall be a lien upon all gifts made
> during the period for which the return was filed, for
> 10 years from the date the gifts are made.

26 U.S.C.A. § 6324(b) (West 1989).  Thus, a special gift tax lien

against the property arose automatically on August 14, 1986, when

Elizabeth Boyer conveyed it to CPA.  NEAC argues that the special

gift tax lien expired when not enforced after ten years, while

the government contends that the lien created in it a still-

viable interest senior to NEAC's mortgage.  Specifically, NEAC

contends that the special gift tax lien provided for by 26 U.S.C.

§ 6324(b) is subject to a ten-year time limit that is durational

---

[3]In responding to the instant motion, the government advances several additional arguments relating to its purported estate tax lien against the property.  Although the government has made manifest its intention to challenge on appeal the court's finding that the property passed as a gift and not as part of Elizabeth Boyer's estate, the court has previously ruled on this issue. The court will not allow the government to reopen an issue that has been fully litigated and determined.  Thus, the court will not consider the government's arguments with respect to any estate tax lien.  The government is instructed to stop raising issues that have already been ruled upon by the court.

rather than limitational, so that, unless the government enforced the lien against the property within ten years of its creation, it expired.  The government contends that the ten year period is limitational and not durational.  Thus, the government urges that its commencement of an action within ten years of the conveyance tolled the running of the period and preserved the special gift tax lien.

The majority of courts addressing this issue in the related context of special estate tax liens have concluded that the ten year period is durational and not limitational.[4]  See United States v. Davis, 52 F.3d 781, 783 (8th Cir. 1995); United States v. Potemken, 841 F.2d 97, 101 (4th Cir. 1988); United States v. Cleavenger, 517 F.2d 230 233 (7th Cir. 1975); United States v.

_____

[4]The special gift tax lien and special estate tax lien are established by two subsections of 26 U.S.C. § 6324.  See 26 U.S.C.A. § 6324(a) (West 1986) (special estate tax lien); id. § 6324(b) (special gift tax lien).  The operative language of the two subsections is parallel.  Compare id. § 6324(a)(1) ("Unless the estate tax imposed . . . is sooner paid in full, or becomes unenforceable by reason of lapse of time, it shall be a lien upon the gross estate of the decedent for 10 years from the date of death . . .") with id. § 6324(b) ("[U]nless the gift tax imposed . . . is sooner paid in full or becomes unenforceable by reason of lapse of time, such tax shall be a lien upon all gifts made during the period for which the return was filed, for 10 years from the date the gifts are made.").  Although prior cases have interpreted only the statutory duration of the special estate tax lien, the court finds that the parallel wording of the two subsections signals Congress's intent that the two provisions be given the same effect.  Therefore, the logic of cases dealing with the duration of the special estate tax lien applies with equal force to the duration of the special gift tax lien.

Schneider, No. A1-89-19, 1991 WL 496863, at *3 (D.N.D. Apr. 10, 1991). But see United States v. Saleh, 514 F. Supp. 8, 12 (D.N.J. 1980) (rejecting Cleavenger and adopting limitational approach); cf., e.g., Detroit Bank v. United States, 317 U.S. 329, 332-333 (1943) (upholding validity of estate tax lien beyond absolute ten year period without discussion of any applicable durational limit, thus implicitly reaching result contrary to Cleavenger and its progeny); Rosenberg v. McLaughlin, 66 F.2d 271 (9th Cir. 1933) (same); United States v. Cruikshank, 48 F.2d 352 (S.D.N.Y. 1931) (same). Courts concluding that the period is durational have rested their conclusion primarily upon the plain language of the statute. See Davis, 52 F.3d at 782 (holding that "the plain language of the statute defines the lien as durational"); Potemken, 841 F.2d at 100, 101 (holding both that "[t]he language of the statute on its face is plain, it admits of no ambiguity," and government had not shown statute to present "rare and exceptional circumstance" justifying interpretation contrary to statute's plain meaning); Cleavenger, 517 F.2d at 232-33, 234 (finding little guidance in the legislative history and relying on rule that "ordinary meaning of the language must be presumed to be intended, unless it would manifestly defeat the object of the provisions").

The government urges the court to adopt the contrary position, exemplified by Saleh, that the ten-year period is limitational. See 514 F. Supp. at 10-12. The Saleh court reasoned that adoption of a durational rule would reward dilatory taxpayers and encourage delay, see id. at 10-11, and that it could not "impute to Congress an intent to make the availability of a remedy dependent, not on the timely action of the Government in filing suit, but on the progress of the court's own calendar," id. at 11. It also sharply criticized the Cleavenger court's reasoning, inter alia, because the durational rule by implication overturns the result of cases where the issue was not explicitly addressed, such as in Detroit Bank, 317 U.S. at 332-333. However, the reasoning of the Saleh case has itself been criticized, see, e.g., Davis, 52 F.3d at 782-83, and it has not been widely followed, see United States v. Harrell, No. 87-714 CIV-T-10(C), 1987 WL 49363, at *1-2 (M.D. Fla. Dec. 11, 1987) (following Saleh); United States v. Warner, No. 83 CIV 3717 (LBS), 1985 WL 2575, at *6-7 (S.D.N.Y. Sept. 18, 1985) (same) (only reported cases following Saleh).

The court finds the reasoning of Cleavenger and its progeny persuasive. Section 6324(b) states that the special gift tax lien "shall be a lien upon all gifts . . . for 10 years from the date the gifts are made." 26 U.S.C.A. § 6324(b). This language

unambiguously and without qualification invokes a durational
period.  Nothing in the limited legislative history indicates a
contrary result was intended.  See, e.g., Cleavenger, 517 F.2d at
232-33.  Thus, the court holds that the ten year period
prescribed for the special gift tax lien is durational, not
limitational.  The lien therefore expired on August 14, 1996,
unless executed prior to that date.


II.  Execution of Special Gift Tax Lien

NEAC argues that the government failed to execute the
special gift tax lien when it failed to foreclose on and sell the
property by August 14, 1996.  The government contends that a sale
of the property is unnecessary.  It urges that because it
recorded a notice of federal tax lien for gift tax owed on the
property on July 11, 1996, and served upon NEAC a notice of
seizure of the property, a notice of encumbrances, and a levy for
gift tax on August 14, 1996, it satisfied the requirement that
the lien be enforced within the ten-year period.  Although prior
cases dealing with the special estate tax lien provision have
mentioned this issue, none of those cases required its
resolution.  See Davis, 52 F.3d at 783 (government failed to
develop the issue in opening brief and was barred from raising it
for first time in reply brief); Potemken, 841 F.2d 101-02

9

(government's levy invalid due to failure to provide prior notice of intent to levy).

Resolution of this issue is closely bound up with the court's determination that the ten-year period is durational rather than limitational. To allow the government to escape the action of the statute's ten year durational period by some action short of full enforcement would undermine the congressional intent evinced by the clear wording of § 6324(b) that the special gift tax lien "shall be a lien . . . for 10 years." See Potemken, 841 F.2d at 100-01. This is true whether the action is only the initial step of instituting a legal proceeding or the further steps of recording a notice of lien or serving a notice of seizure. The Supreme Court has made clear that a levy against property or seizure of the property does not grant the government an ownership interest in that property. See United States v. Whiting Pools, Inc., 462 U.S. 198, 209-10 (1983). Thus, although the government had clearly begun enforcement efforts, those efforts were not complete.

In this case the government waited until the final day of the durational period to begin its enforcement action against the property. The court concludes that the government's attempt to enforce the special gift tax lien by recording a notice of levy and serving a notice of seizure was insufficient to execute the

10

special gift tax lien within the requisite ten-year period.[5]

Therefore, the court rules that the government's special gift tax

lien expired on August 14, 1996.

III. <u>Priority of General Tax Lien</u>

NEAC finally argues that its mortgage is of higher priority

than the government's general gift tax lien.  NEAC concedes that

the government has a right to the gift tax liability associated

with the transfer of the property in the form of a general gift

tax lien.  <u>See</u> 26 U.S.C.A. § 6321 (West 1989).  However, it

contends that for the general lien to be effective against third

parties such as NEAC, notice of the federal tax lien must be

given in accordance with 26 U.S.C. § 6323.  Under 26 U.S.C.

§ 6323(a), the holder of a mortgage recorded before a notice of

federal tax lien is recorded has priority over the federal tax

lien as long as the mortgage is a "security interest."[6]  The

government concedes that NEAC perfected its mortgage prior to the

government's perfection of the general gift tax lien.

Nevertheless, it argues that the plaintiff's bad faith

_____

[5]The court need not determine whether any steps short of a sale
might be sufficient to enforce a special gift tax lien.

[6]The government has not challenged NEAC's contention that the
NEAC mortgage meets the statutory definition of a security
interest.

subordinates the mortgage, making its general gift tax lien of higher priority than the NEAC mortgage. The government asserts that, at the very least, the plaintiff's bad faith raises genuine issues of material fact as to whether the plaintiff's mortgage is valid.

The court notes that neither party has adequately addressed this issue in the instant motion. The government rests its argument primarily on the contention that "the issue is not ripe for resolution because the issues of the bank's knowledge, bad faith, or breach of good faith, which affect the validity of the bank's mortgage under local law and as a security interest under § 6323(a), are set to be tried in May of this year." United States' Resp. to NEAC's Mot. for Summ. J. at 13. Such an assertion would fail to survive a properly supported motion for summary judgment. See Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.") (emphasis added).

12

However, NEAC's motion for summary judgment is equally deficient. In support of its motion, NEAC states the following:

> The United States may note that Thomas Boyer has asserted that the Mortgage NEAC holds should be voided because of 'bad faith' or 'breach of good faith' on the part of the originating bank lender. NEAC believes such assertions are groundless, and is unaware of any New Hampshire case supporting revocation of a mortgage in the circumstances alleged by the Boyers.

New England Acceptance Corporation's Mem. in Supp. of Mot. for Summ. J. on Lien Priority Issues at 16. Such conclusory allegations, unsupported by properly submitted documentary materials, fail to satisfy NEAC's burden of demonstrating that it is entitled to summary judgment on this issue. See Fed. R. Civ. P. 56(c).

The Boyer children have alleged (and the government has taken up allegations) that NEAC is prevented from asserting the priority of its mortgage on the following bases: actual knowledge of the existence of a lien in favor of the United States at the time funds were loaned; estoppel; unclean hands; negligence and fraud; duress; breach of fiduciary duty; breach of a subordination agreement; and breach of agreements with the Boyer children concerning the sale of lots and disposition of proceeds. See Answer and Affirmative Defenses of Thomas S. Boyer and William R. Boyer, Executors of the Estate of Elizabeth H. Boyer, at ¶¶ 60-68. These claims state several possible grounds for

13

relief including, <u>inter</u> <u>alia</u>, New Hampshire's Uniform Fraudulent Transfer Act, N.H. Rev. Stat. Ann. §§ 545-A:1 to A:12 (1997) (providing that obligations fraudulent as to present or future creditors may be avoided "to the extent necessary to satisfy the creditor's claim."). The court concludes that genuine issues of material fact remain as to NEAC's knowledge and good faith with respect to its mortgage interest and whether it should be subordinated to the government's general gift tax lien. Therefore, the court denies summary judgment on this issue.

<u>Conclusion</u>

For the reasons stated above, NEAC's motion for summary judgment (document no. 148) is granted in part and denied in part.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

September 17, 1997

cc:  Beth A. Westerman, Esquire
     Andrew W. Serell, Esquire
     Thomas W. Ostrander, Esquire
     Byron R. Prusky, Esquire
     Duncan J. Farmer, Esquire
     Warren C. Nighswander, Esquire
     Arnold Rosenblatt, Esquire